UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------------x
SHELLY FISHER,                                                        :
                                                                     :
                                          Plaintiff,                 :
                                                                     :      **COMPLAINT**
                    -against-                                        :      Jury Trial Demanded
                                                                     :
VALLEY STREAM CENTRAL HIGH SCHOOL                                    :
DISTRICT, ED CURRAN, NAKEISHA SMITH,                                :      Case No.:
and BRET STRAUSS,                                                   :
                                                                     :
                                          Defendants.                :
-------------------------------------------------------------------------------------x

Plaintiff, by her attorney LAW OFFICE OF BRIAN L. GREBEN, complaining of the

defendants, alleges as follows:

## PRELIMINARY STATEMENT

1.      This case is brought under the Title VII, the 14th Amendment of the United States

Constitution, the New York State Human Rights Law (N.Y. Exec. L. § 296 *et seq.*), the Nassau

County Administrative Code, the Americans with Disabilities act of 1990, § 2 *et seq.* (42 U.S.C.A.

§ 12101 *et seq.*), and 29 U.S.C. § 185.

## JURISDICTION

2.      The jurisdiction of the Court over this controversy is based upon 42 U.S.C. §2000e

et. seq., and 28 U.S.C. §§ 1331 and 1367(a).

3.      Plaintiff duly filed a charge of discrimination with the New York State Division of

Human Rights ("NYSDHR") and the U.S. Equal Employment Opportunity Commission

("EEOC") on August 12, 2022.

4.      Plaintiff received a Right to Sue letter from the EEOC on February 8, 2023.

5.      This action is brought within 90 days of Plaintiffs' receipt of same.

## VENUE AND PARTIES

6.      The unlawful practices alleged below were committed within the State of New York, County of Nassau.

7.      At the time of the unlawful practices, plaintiff was a resident of Nassau County in the United States District Court, Eastern District of the of New York.

8.      Defendant Valley Stream Central High School District ("Valley Stream") was, and still is, a public school district organized under the laws of the State of New York and located in Nassau County, New York.

9.      As a public school district governed by New York Education Law, Valley Stream has policies and regulations in place intended to prevent the occurrence of unlawful discrimination.

10.      Valley Stream is an "Employer" as defined by all relevant statutes including, but not limited to, Title VII and New York Executive Law.

11.      Defendant Ed Curran was a Department Chairperson at Valley Stream, and had binding authority to assign work responsibilities, dictate schedules, and set policies, including, but not limited to, those directly affecting plaintiff.

12.      Defendant Nakeisha Smith was a Department Chairperson at Valley Stream, and had binding authority to assign work responsibilities, dictate schedules, and set policies, including, but not limited to, those directly affecting plaintiff.

13.      Defendant Bret Strauss was a Principal at Valley Stream, and had binding authority to assign work responsibilities, bring disciplinary charges, and set policies, including, but not limited to, those directly affecting plaintiff.

14.      Hereinafter, defendants Ed Curran, Nakeisha Smith, and Bret Strauss will collectively be referred to as "the individual defendants."

## **FACTS**

15.     Plaintiff Shelly Fisher is a female math teacher who worked for Valley Stream as math teacher from September 2002 until she was unlawfully placed on leave (with her pay and benefits suspended) in 2021.  She was awarded tenure in 2005.

16.     Ms. Fisher's employment experience at Valley Stream remained free from overt discriminatory conduct until approximately 2014.  During her first twelve (12) years teaching at Valley Stream, she had an exemplary record in all respects including, but not limited to, attendance.

17.     Unfortunately, following a change of administration in 2014, Ms. Fisher began to experience regular and pervasive acts of discrimination and a hostile work environment – specifically based on her status as an unmarried female without children – which eventually led to the filing of an EEOC charge and the instant lawsuit.

18.     The discrimination Ms. Fisher faced primarily took the form of a) adverse work consequences such as receiving extra work assignments and curriculum review, to the point where it took nights, weekends, and holidays to complete and ultimately affected her health and b) multiple comments from both coworkers and supervisor to the effect of, "you need to do this because X has children and cannot."

19.     From 2014 through the end of her employment with Valley Stream, defendants, including, *inter alia*, Ed Curran and Nakeisha Smith, began regularly altering Ms. Fisher's work schedule, placing it in a state of flux that was not comparable to those of male teachers or other female teachers (most of whom were, unlike Ms. Fisher, married with children).  Upon information and belief, teacher schedules generally stayed the same from year to year.  Ms. Fisher's schedule was the only one to change in complexity and intensity. .

20.     Ms. Fisher was required to revise math curriculums for multiple classes in 7th grade

(including accelerated and special education), 8th grade and 9th grade.  No other teachers were assigned ANY curriculum revisions.

21.     Furthermore, defendants assigned Ms. Fisher multiple classes comprised of specific, distinct groups of students.   This dramatically increased Ms. Fisher's workload, because each class required a unique curriculum.  Defendants did not assign comparably varied classes to other teachers, who were only required to create one (1) set of plans per year (which involved virtually no work because they used the same plans year after year).

22.     Ms. Fisher was required to work on weekends, nights and even holidays to complete the inordinate amount of work that was constantly assigned to her.  Ms. Fisher is aware of no other teachers who were given so much work that they had to spend a comparable amount of time working during weekends, nights and holidays.

23.     Defendants and Ms. Fisher's coworkers were utterly unsympathetic when Ms. Fisher objected to the unfair, atypical workload she was expected to complete.  At times, they went to outrageous lengths to ensure that she would have to complete her excessive assignments on her own, without help from the others.  For example, on at least two (2) different occasions (in 2015 and 2017), Ms. Fisher's car keys were hidden from her at the end of the workday to literally force her to stay and do more.

24.     In 2017, Ms. Fisher accidentally left a flash drive at Valley Stream.  This drive contained years of vital files, forms and data which Ms. Fisher relied on in revising and creating curriculum.  When Ms. Fisher finally recovered the drive, its contents had been erased. Furthermore, whoever erased the contents must have stolen the data first, because the files have subsequently appeared in the control of other faculty members, who have used them for their own benefit while Ms. Fisher has had to draft new documents from scratch, without the use of the templates that she labored to create.

25.     In or around June 2019, plaintiff learned that defendant planned to reassign her teaching position to a new hire and have Ms. Fisher begin travelling back and forth between buildings.   At this point, Ms. Fisher was a tenured teacher with nearly twenty (20) years of experience, and requiring her to complete this physically difficult work detail instead of assigning it to a newer, less experienced teacher, made no sense and was obviously unfair.  Moreover, it violated provision 5.22.4 of the collective bargaining agreement (the "Agreement") between Valley stream and Local 1633 (the teachers' union in which Ms. Fisher was a member).  Provision 5.22.4 states that "[l]engh of service shall be a consideration in determining transfers."  A copy of the Agreement is annexed hereto as Exhibit "1."

26.     By scheduling Ms. Fisher to teach in two (2) separate buildings, defendants also obligated Ms. Fisher to give extra help in both buildings.  This required her to drive from one building to another at the end of her school day, and extended her daily hours well past the seven (7) hour and thirty (30) minute maximum imposed by the Agreement.  *See* Exhibit "1," provisions 5.4.1 and 5.25.1.4.

27.     In June 2021, When Ms. Fisher learned of defendants' plans to assign her position to a new hire and require her to travel back and forth between buildings, she immediately began to verbalize her concerns.  The following month (July 2021), she met with Ed Curran and discussed the situation, and had subsequent meetings and email exchanges with Curran and other Valley Stream principals in August.  Despite this, defendants implemented their unfair and illogical decision in September; thereafter, Ms. Fisher's objections were essentially met with shrugs and comments to the effect of "sorry, but it's too late to change now."

28.     Ms. Fisher was required to continue this brutal, multiple building schedule until her suspension.  She asked defendants for help with this and the other issues described in this Complaint every year, but nothing was ever done.  On the contrary, defendants retaliated against

Ms. Fisher by increasing the complexity and quantity of the work they assigned her.  These increases continued year after year.

29.     Ms. Fisher was never provided with a valid justification for defendants' unreasonable and discriminatory practices.  Nevertheless, it has been repeatedly made clear to her that defendants' rationale for giving her so much more work than other teachers is that she, unlike the others, was a single woman who did not have children; this was stated explicitly by Ed Curran, Bret Strauss, Nakeisha Smith, and others, on several occasions.

30.     Ms. Fisher's fellow teachers openly mocked her, laughed at her, and made sexist remarks at her expense.  These remarks – which were made on at least a weekly-to-daily basis throughout the period between 2014 and the end of her employment – included, but were not limited to, that Ms. Fisher had a "resting bitch face" and that she should stop complaining about her workload because she did not have a husband or have to care children of her own.

31.     Ms. Fisher repeatedly brought concerns about her discrimination to the administration of Valley Stream including, but not limited to, the individual defendants).   Indeed, in every year since 2014, Ms. Fisher had meetings with in which she expressed her concerns about: a) the unfair and excessive amount of work she was expected to do simply because she was an unmarried woman without children; and b) the constant bullying and harassment she faced from her coworkers.  At least one of the three individual defendants were present at all of these meetings, and each individual participated in several of the meetings.

32.     Despite Ms. Fisher's annual meetings with her supervisors and Valley Stream's administrators, defendants remained unresponsive.

33.     Defendants were put on direct notice of discrimination she faced at least six (6) times over the years since 2014, but never conducted a meaningful investigation into her allegations or took any actions to address them.

34.     As the years went by, Ms. Fisher's coworkers became increasingly aware that defendants were dismissive of her concerns, and that there would be no repercussions for their continuing abuse.  Accordingly, the harassment Ms. Fisher faced continued to increase in frequency and intensity.

35.     As a result of the excessive workload combined with the hostile work environment and the mockery from other school personnel, Ms. Fisher's health became increasingly damaged. Ms. Fisher began seeing medical professionals for symptoms including extreme fatigue, anxiety and insomnia.

36.     In 2020 and 2021, Fisher repeatedly visited doctors for assistance in managing her symptoms.  Multiple medical professionals have evaluated Ms. Fisher since she began to suffer from the discriminatory, hostile work environment created by defendants.  These physicians and psychologists advised Ms. Fisher that the extreme fatigue, stress and anxiety she was experiencing was having a seriously detrimental impact on her health, and they recommended that she not return to work until her symptoms (or the conditions at working causing her symptoms) were resolved. As a result of their recommendations, Ms. Fisher missed serval weeks of work.

37.     On February 12, 2021, Ms. Fisher had no choice but to go on Family Medical Leave Act ("FMLA") leave.

38.     Ms. Fisher advised defendants of her ongoing health issues, and the fact that her medical providers opined that they were the direct result of the discrimination and hostile work environment, prior to her going on FMLA leave.  She continued to provide them with medical documentation thereafter, and at all relevant times.

39.     Defendants responded to Ms. Fisher's medical problems and regular complaints about the discrimination and hostile work environment she had had to deal with for years by suspending her pay and medical benefits (despite the fact that she still had unused sick days and

had provided many medical records validating her pressing condition) on September 1, 2021.

40.     In September 2020, March 2021, and April 2021, Ms. Fisher met with representatives of Local 1633, but they never took any steps to help her.  Indeed, it appears that the Union placed Valley Stream's interest above hers, and was either unable or unwilling to take any action to defend her rights.

41.     On April 26, 2021, Ms. Fisher had a phone call with the President of Local 1633 who discouraged her from taking steps against defendants, and ominously told her that she was on "a slippery slope with the District."

42.     Defendants have tried to justify suspending Ms. Fisher by saying that as a result of her absences from work, they were "concerned" about her fitness for duty.  This is a nonsensical excuse, as any reduction in her "fitness" for duty was a direct result of the discrimination and hostile work environment that defendants perpetrated, and allowed to be perpetrated, against her.

43.     It should be noted that in the years between 2002 and 2014, Ms. Fisher never missed a single day of work.  Her subsequent attendance records demonstrate that as the demands of her workload increased in complexity and quantity, so did her absences.

## FIRST CAUSE OF ACTION

### Title VII Sexual Harrasment and Hostile Work Environment Against Valley Stream

44.     Plaintiff repeats and realleges paragraphs 1 through 43 of this Complaint as if fully set forth herein.

45.     Valley Stream discriminated against plaintiff in the terms and conditions of her employment based on her gender and marital status in violation of Title VII.

46.     Valley Stream is liable under Title VII as plaintiff's employer.

47.     Valley Stream acted with malice and/or reckless indifference to plaintiff's statutorily protected rights.

48.     As a result of Valley Stream's discriminatory acts, plaintiff has suffered, is suffering, and will continue to suffer irreparable injury, monetary damage, mental anguish, emotional distress, humiliation, and other compensable damage unless and until this Court grants relief.

## SECOND CAUSE OF ACTION

### Sex/Gender Hostile Work Environment
### Fourteenth Amendment as enforced by 42 U.S.C. § 1983

49.     Plaintiff repeats and realleges paragraphs 1 through 48 of this Complaint as if fully set forth herein.

50.     Individual defendants Ed Curran, Nakeisha Smith, and Bret Strauss, under color of state law, altered the terms, conditions and privileges of plaintiff's employment because of her sex/gender, in violation of the Fourteenth Amendment of the United States Constitution (as enforced by 42 U.S.C. § 1983) by subjecting plaintiffs to a hostile work environment, based on sex/gender.

51.     Individual defendants Ed Curran, Nakeisha Smith, and Bret Strauss failed to remedy the wrong and exhibited gross negligence in supervising subordinates and deliberate indifference to plaintiffs' rights, and created a policy or custom under which the unconstitutional practices occurred and/or allowed the continuance of such policy or custom. Defendants knew and/or should have known of the conduct set forth above and failed to take adequate remedial steps to correct or prevent the behavior and/or failed to provide adequate training to ensure that such conduct would not occur.

52.     Defendant Valley Stream is subject to liability because it maintained a policy, practice or custom, whereby it committed, condoned, and/or remained deliberately indifferent to sexual harassment, which may be inferred in the following ways:

    a.  Defendants maintained a custom or practice of discriminating against plaintiff

based on her sex/gender. The discriminatory practices were so persistent and widespread that they constitute actual and/or constructive acquiescence of policymakers.

b.   High-level supervisors and/or persons responsible for preventing gender discrimination failed to properly investigate, prevent, remedy, or correct the unlawful conduct.

c.   Inadequate training/supervision was so likely to result in discrimination that policymakers can reasonably be said to have been deliberately indifferent to the need to provide better training and supervision.

d.   Policymakers knew of and failed to correct the unlawful conduct.

## THIRD CAUSE OF ACTION

### New York State Human Rights Law
### Sexual Harrasment and Hostile Work Environment Against all Defendants

53.    Plaintiff repeats and realleges paragraphs 1 through 52 of this Complaint as if fully set forth herein.

54.    By the acts and practices described above, defendants have discriminated against plaintiff on the basis of her gender and marital status in violation of the New York State Human Rights Law ("NYSHRL").

55.    Defendant Valley Stream is liable under the NYSHRL as plaintiff's employer.

56.    Defendant Ed Curran is liable under the NYSHRL as plaintiff's employer and/or as an aider and abettor of the discrimination against plaintiff.

57.    Defendant Bret Strauss is liable under the NYSHRL as plaintiff's employer and/or as an aider and abettor of the discrimination against plaintiff.

58.    Defendant Nakeisha Smith is liable under the NYSHRL as plaintiff's employer and/or as an aider and abettor of the discrimination against plaintiff.

59.    As a result of defendants' discriminatory acts, plaintiff has suffered, is suffering, and will continue to suffer irreparable injury, monetary damage, mental anguish, emotional distress, humiliation, and other compensable damage unless and until this Court grants relief.

60.     Defendants have acted intentionally and with malice or reckless indifference to plaintiff's statutorily protected rights.

## FOURTH CAUSE OF ACTION

### Nassau County Unlawful Discrimination Practices Laws
### Sexual Harrasment and Hostile Work Environment Against all Defendants

61.     Plaintiff repeats and realleges paragraphs 1 through 60 of this Complaint as if fully set forth herein.

62.     The Nassau County Administrative Code §21-9.8(1)(a), Unlawful Discrimination Practices ("UDP"),  provides, inter alia, that "[i]t shall be an unlawful discriminatory practice…[f]or an employer to…discharge from employment or to discriminate against any individual in…conditions or privileges of employment because of the actual or perceived gender…of any individual ."

63.     The Nassau County Administrative Code §21-9.9.1, Penalties,  provides, *inter alia*, that any person violating the UDP will be liable for damages.

64.     As described above, defendants discriminated against plaintiff on the basis of her gender in violation of the UDP.

65.     As a result of defendants' unlawful discriminatory conduct in violation of the UDP, plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

## FIFTH CAUSE OF ACTION

### Violation of the Americans with Disabilities Act Against All Defendants

66.     Plaintiff repeats and realleges paragraphs 1 through 65 of this Complaint as if fully set forth herein.

67.     This Count is brought under the Americans with Disabilities Act (the "ADA"), 42

11

U.S.C. § 12101 et seq., and reference is made to the ADA in its entirety, and to 42 U.S.C. §§

12102, 12111, 12112, 12117 and to 42 U.S.C. § 2000e-5.

68.     At all relevant times, Plaintiff was an "employee" and "person" within the meaning

of the ADA.

69.     At all relevant times, Defendants were and are "employers" and "covered entities"

within the meaning of the ADA.

70.     Under the ADA, the term disability means, with respect to an individual: (a) a

physical or mental impairment that substantially limits one or more of the major life activities of

such individual; (b) a record of such an impairment; or (c) being regarded as having such an

impairment.

71.     At all relevant times, plaintiff was a "qualified individual" with a disability within

the meaning of the ADA because, among other items: (1) she had a physical or mental impairment

that substantially limits one or more of the major life activities of such individual; (2) she has a

record of such an impairment; and/or (3) she was being regarded as having such an impairment.

*See, e.g.,* 42 U.S.C. § 12102.

72.     Defendants refused to provide plaintiff with reasonable accommodations that would

have allowed Plaintiff to continue working, despite the fact that reasonable accommodations were

readily available.

73.     Defendants continuously harassed plaintiff regarding, and as a result of, her

disability.

74.     Defendants' unlawful conduct was intentional and was carried out with malice or

reckless indifference to plaintiff's protected rights to be free from unlawful discrimination.

75.     Defendants' conduct, as alleged herein, constituted unlawful employment practice,

unlawful discrimination, and harassment on the basis of a disability, in violation of the ADA.

76.     As a result of defendants' unlawful conduct, plaintiff has suffered and continues to suffer injury, with resulting monetary and other damages, including, but not limited to, lost wages, lost interest and attorneys' fees and costs. Plaintiff is entitled to recover such monetary and other damages, punitive damages, interest, and attorneys' fees and costs from defendants under the ADA.

77.     As a further result of defendants' unlawful conduct, plaintiff has suffered and continues to suffer, among other items, emotional distress, mental anguish, emotional pain, inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation.

78.     Plaintiff is entitled to recover damages for such injuries from defendants under the ADA.

## SIXTH CAUSE OF ACTION

### Disability Discrimination Pursuant to NYSHRL Against All Defendants

79.     Plaintiff repeats and realleges paragraphs 1 through 78 of this Complaint as if fully set forth herein.

80.     This Count is brought under the NYSHRL, N.Y. Exec. L. § 290 *et seq*, and reference is made to the NYSHRL in its entirety and to N.Y. Exec. L. §§ 292, 292(1), 292(5), 292(6), 292(21), 296, 296(1), 296(1)(a), 296(1)(e), 296 (3)(a), 296 (3-a), (c), 296(7), and 297(9).

81.     At all relevant times, plaintiff had a disability within the meaning of the NYSHRL, because, among other items: (1) she had a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevent the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques; (2) she had a record of such an impairment; and/or (3) she was and is perceived or regarded as having such an impairment.

82.     Plaintiff was able to perform the functions of her job with reasonable accommodation, as that term is defined under the NYSHRL.

83.     Defendant's conduct, as alleged herein, constituted unlawful discriminatory practices and unlawful discrimination and harassment on the basis of disability in violation of the NYSHRL.

84.     Defendants' unlawful conduct was intentional and was carried out with malice or reckless indifference to Plaintiff's protected rights to be free from unlawful discrimination.

85.     As a result of Defendant 's unlawful conduct, plaintiff has suffered and continues to suffer injury, with resulting monetary and other damages, including, but not limited to, lost wages, lost interest and attorneys' fees and costs.

86.     Plaintiff is entitled to recover such monetary and other damages, from defendants under the NYSHRL.

87.     As a further result of defendants' unlawful conduct, plaintiff has suffered and continues to suffer, among other items, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, and lasting embarrassment and humiliation.

88.     Plaintiff is entitled to recover damages for such injuries from defendants under the NYSHRL.

## SEVENTH CAUSE OF ACTION

### Nassau County Unlawful Discrimination Practice
### Laws Disability Discrimination Against All Defendants

89.     Plaintiff repeats and realleges paragraphs 1 through 88 of this Complaint as if fully set forth herein.

90.     The UDP,  provides, inter alia, that "[i]t shall be an unlawful discriminatory practice…[f]or an employer to…discharge from employment or to discriminate against any individual in…conditions or privileges of employment because of the actual or perceived…disability…of any individual ."

91.     The Nassau County Administrative Code §21-9.9.1, Penalties,  provides, *inter alia*,

that any person violating the UDP will be liable for damages

92.     As described above, defendants discriminated against plaintiff on the basis of her

disability in violation of the UDP.

93.     As a result of defendants' unlawful discriminatory conduct in violation of the UDP,

plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award

of monetary damages and other relief.

## EIGHTH CAUSE OF ACTION

### Title VII Retaliation Against Valley Stream

94.     Plaintiff repeats and realleges paragraphs 1 through 93 of this Complaint as if fully

set forth herein.

95.     Valley Stream retaliated against plaintiff for her internal complaints, external

complaints, opposition to unlawful employment practices, and medically required time off from

work in violation of Title VII.

96.     Defendant Valley Stream is liable under Title VII as plaintiff's employer.

97.     Valley Stream acted with malice and/or reckless indifference to plaintiff's

statutorily protected rights.

98.     As a result of Valley Stream's retaliatory acts, plaintiff has suffered, is suffering,

and will continue to suffer irreparable injury, monetary damage, mental anguish, emotional

distress, humiliation and other compensable damage unless and until this Court grants relief.

## NINTH CAUSE OF ACTION

### NYSHRL Retaliation Against All Defendants

99.     Plaintiff repeats and realleges paragraphs 1 through 98 of this Complaint as if fully

set forth herein.

100.    By acts and practices described above, Defendants have retaliated against Plaintiff

for her protected activity and for opposing practices prohibited by NYSHRL.

101.   As a result of defendants' retaliatory acts, plaintiff has suffered, is suffering, and will continue to suffer irreparable injury, monetary damage, mental anguish, emotional distress, humiliation, and other compensable damage unless and until this Court grants relief.

102.   Defendants have acted intentionally and with malice or reckless indifference to plaintiff's statutorily protected rights.

## TENTH CAUSE OF ACTION

### Nassau County Unlawful Discrimination
### Practice Laws Retaliation Against All Defendants

103.   Plaintiff repeats and realleges paragraphs 1 through 102 of this Complaint as if fully set forth herein.

104.   The Nassau County Administrative Code §21-9.8(5),  provides, inter alia, that "[n]o person engaged in any activity to which this title applies shall retaliate or discriminate against any person because he or she has opposed any practices forbidden under the title or because he has filed a complaint, testified, or assisted in any proceeding under this title."

105.   As described above, defendants retaliated against plaintiff for her protected activity and for opposing practices prohibited by the UDP.

106.   As a result of defendants' unlawful discriminatory conduct in violation of the UDP, plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

## ELEVENTH CAUSE OF ACTION

### 29 U.S.C. § 185
### Third-Party Beneficiary Claim for Breach of Collective Bargaining Agreement

107.   Plaintiff repeats and realleges paragraphs 1 through 106 of this Complaint as if fully set forth herein.

108.    Valley Stream entered into a Collective Bargaining Agreement with Local 1633 under LMRA § 301, pursuant to which defendants were bound by the terms of the Agreement and the procedures it required.  The Agreement's terms and procedures include, but are not limited to, rules about hours, rules about job security, rules about seniority, rules about working conditions, rules and procedures involving transfers, and rules about leave time.  Defendants violated these and other terms of the Agreement.

109.    Plaintiff was a person covered by, or an intended third-party beneficiary of, the Collective Bargaining Agreement between Valley Stream and Local 1633.

110.    As a result of defendants' retaliatory acts, plaintiff has suffered, is suffering, and will continue to suffer irreparable injury, monetary damage, mental anguish, emotional distress, humiliation, and other compensable damage unless and until this Court grants relief.

## TWELFTH CAUSE OF ACTION

**Interference with Protected Family Leave,**
**Retaliation, and Discrimination in Violation of the FMLA Against all Defendants**

111.    Plaintiff repeats and realleges paragraphs 1 through 110 of this Complaint as if fully set forth herein.

112.    The above facts clearly establish that:

   a.   defendants attempted to interfere with Ms. Fisher's FMLA's rights;

   b.   that she was unlawfully punished in retaliation for requiring FMLA leave;

   c.   that the abuse to which Ms. Fisher was exposed violated the FMLA; and

   d.   that defendants' action and omissions also meet the criteria of a hostile work environment.

113.    Defendants actions and omissions violated the FMLA's prohibitions against interference, retaliation, and hostile work environments.

114.    Both Valley Stream and the individual defendants are liable to Ms. Fisher for

compensatory and punitive damages.

115.    As described above, Ms. Fisher was subjected to, inter alia:

    a)    harassment from defendants about taking FMLA leave;

    b)    the arbitrary rejection of medical assessments provided by Ms. Fisher, and replacement defendants' own, non-medically based opinions about her health;

    c)    the violation of Valley Stream's disciplinary procedures, explicitly because Ms. Fisher had taken FMLA leave; and

    d)    the suspension of Ms. Fisher's salary and benefits.

116.    There is no question that the abuse to which Ms. Fisher was exposed violated the FMLA.

117.    Moreover, defendants' action and omissions also meet the criteria of a hostile work environment.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court enter a judgment:

a.    Declaring that the acts and practices complained of herein violate Title VII, the 14th Amendment, the NYSHRL, the UDP, the ADA, 29 U.S.C. § 185, and the FMLA;

b.    Directing defendants to pay plaintiff compensatory damages, including damages for loss of earning potential, emotional distress, humiliation, and pain and suffering;

c.    Directing defendants to pay plaintiff punitive damages as provided by Title VII, the 14th Amendment, the NYSHRL, the UDP, the ADA, 29 U.S.C. § 185, and the FMLA;

d.    Directing defendants to ensure that plaintiff receives the entirety of the benefits

she would have received but for their unlawful actions including, but not limited

to, health care coverage and full pension;

e.      Awarding plaintiff reasonable attorneys' fees and costs;

f.      Awarding plaintiff such interest as is allowed by law, and damages for any adverse

tax consequences stemming from an award;

g.      Granting plaintiff a tax enhancement award to offset adverse tax consequences

associated with a lump sum award of damages; and

h.      Granting such other and further relief as the Court deems necessary and proper.

## DEMAND FOR A TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by

jury in this action.

Dated:  Great Neck, New York
        May 8, 2023


                                        LAW OFFICE OF BRIAN L. GREBEN


                                         /s/ Brian L. Greben
                                        Brian L. Greben
                                        *Attorney for Plaintiff*
                                        SHELLY FISHER
                                        316 Great Neck Road
                                        Great Neck, NY 11021
                                        (516) 304-5357