**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Shelly Fisher, <br><br>                 Plaintiff, <br><br>          -v- <br><br> Valley Stream Central High School District, Ed Curran, Nakeisha Smith, and Bret Strauss, <br><br>              Defendants. | 2:23-cv-3449 <br> (NJC) (AYS) |

## OPINION AND ORDER

NUSRAT J. CHOUDHURY, United States District Judge:

Shelly Fisher ("Fisher") brings this case against her former employer Valley Stream Central High School District ("VSCHSD"), as well as VSCHSD Department Chairperson Ed Curran ("Curran"), VSCHSD Department Chairperson Nakeisha Smith ("Smith"), and VSCHSD Principal Bret Straus ("Strauss") (the "Individual Defendants"), seeking damages and alleging that Defendants engaged in discrimination and retaliation against Fisher during her employment at VSCHSD. (Am. Compl., ECF No. 19.) The Amended Complaint brings the following claims: (1) sex/gender discrimination and hostile work environment claims under Title VII, 42 U.S.C. § 2000e-2(a) (against VSCHSD only); (2) sex/gender discrimination and hostile work environment claims under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 296(1) (against all Defendants); (3) NYSHRL claims for aiding and abetting VSCHSD's discrimination and creation of a hostile work environment, N.Y. Exec. L. § 296(6) (against the Individual Defendants only); (4) a hostile work environment claim under 42 U.S.C. § 1983 ("Section 1983") (against the Individual Defendants only); (5) a Section 1983 *Monell* claim for

maintaining a custom or practice condoning sex/gender discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution (against VSCHSD only); (6) claims for violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (against VSCHSD only); (7) disability discrimination claims under the NYSHRL, N.Y. Exec. L. § 296(1) (against all Defendants); (8) a retaliation claim under Title VII, 42 U.S.C. § 2000e-3(a) (against VSCHSD only); (9) a retaliation claim under the NYSHRL, N.Y. Exec. L. § 296(7) (against all Defendants); (10) a third-party beneficiary and breach of duty of fair representation claim under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, for breach of VSCHSD's collective bargaining agreement with Valley Stream Teachers' Association Local 1633 ("Local 1633"), the teachers union to which Fisher belongs (against VSCHSD only); and (11) interference and retaliation claims under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a)(1)12 (against all Defendants).

Before me is a Motion to Dismiss all federal claims against Defendants ("Motion"). (Mot. Dismiss ("Mot."), ECF No. 30.)[1] For the reasons set forth below, I grant in part and deny in part the Motion as follows:

**1. Title VII Discrimination (Disparate Treatment) Claim.** I dismiss Fisher's Title VII disparate treatment claim in its entirety. As an initial matter, Title VII's statute of limitations bars all of Fisher's claims under that statute to the extent that they concern incidents that occurred more than 300 days before Fisher's filing of a "charge" with the Equal Employment Opportunity Commission ("EEOC"). At the motion to dismiss stage, I must credit Fisher's allegation that the December 23, 2021 informal inquiry she submitted to the EEOC—and not her August 12, 2022

---

[1] As noted below in the Procedural History section, in the first instance, I ordered the parties to brief Defendants' Motion to Dismiss the federal claims only. (Min. Entry, Dec. 5, 2023.)

formal EEOC charge—is the "charge" off of which I must calculate the limitations period. Applying the December 23, 2021 charge date, I find that Fisher's Title VII discrimination claim is time-barred with respect to all alleged incidents except Defendants' decision to suspend Fisher's pay and benefits on September 1, 2021. Further, the "continuing violation" doctrine does not apply to any of the untimely alleged incidents, since this sole timely incident is a "discrete act" under the relevant caselaw. As to the merits of the sole timely alleged incident, I dismiss Fisher's Title VII discrimination claim because the Amended Complaint does not plausibly allege that Fisher's September 1, 2021 suspension of pay and benefits occurred under circumstances giving rise to an inference of disparate treatment on the basis of sex. The parties are directed to conduct limited discovery to resolve the factual question of whether August 12, 2022 is the relevant charge date—which would mean that Fisher's Title VII discrimination claims are time-barred in their entirety.

      **2. Title VII Hostile Work Environment Claim.** I dismiss Fisher's Title VII hostile work environment claim in its entirety. Taking as true at the pleading stage that December 23, 2021 is the applicable charge date, as with Fisher's Title VII discrimination claim, her Title VII hostile work environment claim is time-barred except for Defendants' suspension of Fisher's pay and benefits on September 1, 2021. The "continuing violation" doctrine does not apply because this timely alleged incident is not sufficiently related to the untimely alleged incidents, and thus it does not make up part of the same hostile work environment as that alleged in connection with the prior, untimely incidents. Further, the suspension of Fisher's pay and benefits alone is not enough to state a claim for a hostile work environment on the basis of sex.

      **3. Title VII Retaliation Claim.** I deny dismissal with respect to a portion of Fisher's Title VII retaliation claim but grant dismissal in all other respects. Assuming that December 23,

2021 is the correct charge date, Fisher's Title VII retaliation claim is timely only with respect to the allegation that Defendants suspended her pay and benefits on September 1, 2021 in retaliation for engagement in protected activity. With respect to this sole timely alleged retaliatory action, the Amended Complaint plausibly alleges that Defendants suspended Fisher's pay and benefits in retaliation for her complaints to management, her Local 1633 union representatives, and the Local 1633 president. Accordingly, this portion of Fisher's Title VII retaliation claim survives Defendants' Motion to Dismiss.

**4. ADA Claims.** I dismiss Fisher's ADA claims—both the disparate treatment claim and the failure to accommodate claim—in their entirety. As with Fisher's Title VII discrimination and retaliation claims (and, again, assuming the December 23, 2021 charge date), the only timely alleged adverse action is Defendants' suspension of Fisher's pay and benefits on September 1, 2021. As to the merits of Fisher's ADA claims, the Amended Complaint fails to allege that Fisher suffered from a "disability" as defined in the ADA, that she faced the alleged adverse employment action *as a result of* disability discrimination, or that she sought a reasonable accommodation.

**5. Section 1983 Claims.** I dismiss Fisher's Section 1983 hostile work environment claim against the Individual Defendants and Fisher's *Monell* claim against VSCHSD in their entirety. As a threshold matter, contrary to Defendants' contention, Fisher's Section 1983 claims are not precluded on the basis that she also brings Title VII claims on a similar theory. Additionally, a number of the alleged incidents related to Fisher's Section 1983 hostile work environment claims are timely under Section 1983's three-year statute of limitations, and the untimely alleged incidents are sufficiently related to the timely incidents that the "continuing violation" doctrine applies. Nevertheless, the Amended Complaint fails to state a Section 1983 hostile work

environment claim against the Individual Defendants because it does not plausibly allege that Fisher's sex was the but-for cause of her alleged harassment. The Amended Complaint also fails to state a *Monell* claim because it does not plausibly allege that Fisher experienced the alleged harassment as a result of any municipal policy, whether one adopted by a final policymaker for VSCHSD or one established through widespread, longstanding custom with the force of law.

**6. Punitive Damages Against VSCHSD for Section 1983 Claim.** I have already dismissed Fisher's *Monell* claim against VSCHSD. Nevertheless, I agree with Defendants (and Fisher does not dispute) that punitive damages are unavailable against municipal defendants in Section 1983 suits.

**7. FMLA Claims.** I dismiss Fisher's claim under the FMLA that Defendants interfered with her FMLA benefits but deny dismissal of her claim that Defendants retaliated against Fisher in response to her taking FMLA leave. With respect to Fisher's FMLA interference claim, the Amended Complaint does not allege that Fisher was denied any benefit under the FMLA; in fact, it alleges that she took the FMLA leave to which she was entitled. Fisher fails to address Defendants' motion to dismiss the FMLA interference claim and, accordingly, has forfeited any opposition to this argument. With respect to Fisher's FMLA retaliation claim, however, the Amended Complaint plausibly alleges that Defendants' decision to suspend Fisher's pay and benefits on September 1, 2021 was in retaliation for her use of FMLA leave.

**8. Section 301/Unfair Representation Claim.** I dismiss Fisher's hybrid Section 301/unfair representation claim because it is time-barred under the six-month statute of limitations drawn from Section 10(b) of the National Labor Relations Act.

**9. Supplemental Jurisdiction/State Law Claims.** Since two of Fisher's federal claims proceed, I have supplemental jurisdiction over Fisher's state law claims, which are part of the

same case or controversy. As set forth below, I order the parties to meet and confer concerning whether, and to what extent, Fisher's state law claims survive in light of the rulings in this Opinion and Order. To the extent that the parties cannot reach an agreement, Defendants shall file a letter seeking a pre-motion conference in anticipation of any motion to dismiss Fisher's state law claims by September 17, 2025. Fisher shall file any response by October 1, 2025.

## JURISDICTION

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Fisher brings multiple federal claims. (Am. Compl. ¶¶ 57–65, 74–86, 97–101, 106–18.) As I explain below, Discussion Section X, the Court has supplemental jurisdiction over the state law claims alleged in the Amended Complaint under 28 U.S.C. § 1367(a) because those claims are part of the same case or controversy as the federal claims.

Venue in the Eastern District of New York is proper under 28 U.S.C. § 1391(b)(2) because the Amended Complaint alleges that a substantial part of the events that gave rise to Smith's claims occurred in this district. (*See* Am. Compl. ¶ 12 (alleging that VSCHSD is "a public school district . . . located in Nassau County, New York").)

## FACTUAL BACKGROUND

The following facts are taken from the Amended Complaint (Am. Compl.) and the Collective Bargaining Agreement between Local 1633 and VSCHSD ("Union Contract," ECF No. 19-1), which is attached to the Amended Complaint. *See Clark v. Hanley* 89 F.4th 78, 93 (2d Cir. 2023) (holding that, on a Rule 12(b)(6) motion to dismiss, district courts may consider "facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, matters of which judicial notice may be taken, [and] documents not

6

expressly incorporated by reference in the complaint that are nevertheless 'integral' to the complaint").[2]

Fisher was employed as a math teacher at VSCHSD from September 2002 until she was placed on leave, with her pay and benefits suspended, on September 1, 2021. (Am. Compl. ¶¶ 19, 48.) Fisher is an unmarried woman with no children. (*Id.* ¶¶ 19, 21, 56.)

VSCHSD is a public school district in Nassau County, New York. (*Id.* ¶ 12.) Curran and Smith were, at the relevant time, Department Chairs at VSCHSD; in their positions, they had "binding authority to assign work responsibilities, dictate schedules, and set policies." (*Id.* ¶¶ 15–16.) Defendant Strauss was a Principal at VSCHSD; as such, he had "binding authority to assign work responsibilities, bring disciplinary charges, and set policies." (*Id.* ¶ 17.) Notably, the Amended Complaint does not identify any specific VSCHSD "policies" that any of the Individual Defendants had binding authority to set or the scope of such policymaking authority. (*See id.* ¶¶ 15–17.)

Fisher alleges that she experienced no "overt discriminatory conduct" from 2002 until approximately 2014, when there was a "change in administration." (*Id.* ¶¶ 20–21.) At that time, Curran and Smith "began regularly altering" Fisher's work schedule, "placing it in a state of flux that was not comparable to those of male teachers or other female teachers (most of whom were, unlike Ms. Fisher, married with children)." (*Id.* ¶ 23.) Teachers' schedules generally remain the same from year-to-year, and Fisher's schedule "was the only one to change in complexity and intensity." (*Id.* ¶ 24.) During this time, Fisher was also assigned to "revise math curriculums for multiple classes in 7th grade (including accelerated and special education), 8th grade and 9th

---

[2] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, brackets, and citations.

grade," while no other teachers were asked to make any curriculum revisions. (*Id.* ¶ 25.) Fisher was also assigned to teach a greater variety of classes, each with a "unique curriculum," which meant that she had to make multiple different class plans per year, while other teachers only had to make one. (*Id.* ¶ 26.) The result was a "dramatic[] increase[]" in Fisher's workload, requiring Fisher to work on weekends, nights, and holidays. (*Id.* ¶¶ 26–27.)

The Amended Complaint alleges that Fisher's coworkers were "utterly unsympathetic" to her complaints about her workload. (*Id.* ¶ 28.) For example, on at least two occasions (one in 2015 and one in 2017), unidentified coworkers hid Fisher's car keys from her "to literally force her to stay and do more." (*Id.*) On another occasion in 2017, Fisher left at the school a flash drive containing curriculum-related materials; when she retrieved the flash drive, the contents had been erased. (*Id.* ¶ 29.) Fisher suspects that someone at VSCHSD stole the contents of the flash drive, since some of the erased materials have appeared in other faculty members' work product. (*Id.*)

Around June 2019,[3] Fisher learned that Defendants were reassigning her teaching position to a new hire, despite the fact that Fisher was a tenured teacher with twenty years of

---

[3] The Amended Complaint contains a number of obvious errors. Relevant here, Paragraph 30 of the Amended Complaint alleges that Fisher learned of Defendants' plans to assign her to a new role "[i]n or around June 2019," while Paragraph 33 of the Amended Complaint alleges that she learned of the reassignment plans "[i]n June 2021." (Am. Compl. ¶¶ 30, 33.) As discussed below, the Amended Complaint alleges that Fisher took FMLA leave starting on February 12, 2021 and was suspended without pay and medical benefits on September 1, 2021. (*Id.* ¶ 48.) If Fisher was assigned to the new role in June 2021 but then suspended on September 1, 2021, then Fisher would never have actually worked in this new position. However, the Amended Complaint clearly alleges that Fisher's health suffered as a result of working in this new position. (*Id.* ¶¶ 33–34, 41–44.) Thus, despite the inconsistency in the pleadings, I understand that the Amended Complaint alleges that Fisher was informed of her assignment to the new role in June 2019, began working in that new role in September 2019, worked in her new position for approximately a year and a half before going on FMLA leave beginning on February 12, 2021, and was suspended on September 1, 2021.

experience, and assigning Fisher to a teaching position that required her to travel back and forth between two separate buildings within the school district. (*Id.* ¶¶ 30, 33.) According to Fisher, these actions by Defendants violated provision 5.22.4 of the Union Contract, which provides that "[l]ength of service shall be a consideration in determining transfers." (*Id.* ¶ 31; Union Contract ¶ 5.22.4.) In July 2019, Fisher "discussed" with Curran her concerns about the new assignment, and in August 2019, she had email correspondence with Curran and other VSCHSD principals about her complaints. (Am. Compl. ¶ 33.) Despite her complaints, Defendants proceeded with the reassignment in September 2019 and, after the fact, made comments to the effect of "sorry, but it's too late to change now." (*Id.*) Fisher continued in this new position until her pay and medical benefits were suspended on September 1, 2021. (*Id.* ¶ 34.)

While in her new role, Fisher "asked [D]efendants for help" with her "brutal, multiple building schedule" and "other issues" every year, but "nothing was ever done." (*Id.*) The Amended Complaint alleges that, instead, Defendants "retaliated against Ms. Fisher by increasing the complexity and quantity of the work they assigned her . . . year after year." (*Id.*) Fisher also met with representatives of Local 1633 in September 2020, March 2021, and April 2021; however, "it appears that the Union placed Valley Stream's interest above hers, and was either unable or unwilling to take any action to defend her rights." (*Id.* ¶ 51.) In particular, Fisher had a phone call with the Local 1633 president on April 26, 2021, during which the president informed Fisher that she was on "a slippery slope with the District." (*Id.* ¶ 52.)

Fisher likewise complained to the VSCHSD administration about "the constant bullying and harassment she faced from her coworkers." (*Id.* ¶ 37.) The alleged bullying and harassment included coworkers telling her that she had a "resting bitch face" and that "she should stop complaining about her workload because she did not have a husband or have to care children of

9

her own."[4] (*Id.* ¶ 36.) The Amended Complaint alleges that harassment of this sort occurred on a "weekly-to-daily basis throughout the period between 2014 and the end of her employment." (*Id.*) Over time, Fisher's coworkers increased the "frequency and intensity" of their "abuse," apparently in light of the fact that the administration did not take action. (*Id.* ¶ 40.)

As a result of the alleged excessive workload and harassment, Fisher began to experience "extreme fatigue, anxiety and insomnia," for which she sought medical attention in 2020 and 2021. (*Id.* ¶¶ 41–42.) Her symptoms required her to miss "several weeks of work." (*Id.* ¶ 44.) On February 12, 2021, Fisher took FMLA leave; she was eligible to take such leave and provided Defendants with the "medical documentation" required to justify the leave. (*Id.* ¶¶ 45–47.) On September 1, 2021 Defendants suspended Fisher's "pay and medical benefits," "despite the fact that she still had unused sick days and had provided many medical records validating her pressing condition." (*Id.* ¶ 48.)[5]

Fisher filed a "written inquiry" with the United States Equal Employment Opportunity Commission ("EEOC") on December 23, 2021. (*Id.* ¶ 3.) Fisher "made numerous efforts to

---

[4] Excerpts from the Amended Complaint and the parties' submissions are reproduced here exactly as they appear in the original documents. Errors in spelling, punctuation or grammar in the parties' submissions will not be corrected or noted.

[5] As discussed in further detail below, Discussion Section VIII.a, the Amended Complaint does not explain the details of Fisher's FMLA leave and subsequent suspension of pay and medical benefits. The Amended Complaint alleges that Fisher took FMLA starting on February 12, 2021. (Am. Compl. ¶ 45.) It does not allege the length of Fisher's FMLA leave, but it further alleges that Defendants "suspended [Fisher's] pay and medical benefits" on September 1, 2021, "while she was out on FMLA leave." (Am. Compl. ¶¶ 48–49.) However, the relevant FMLA regulations permit employees to take twelve weeks of FMLA leave during a twelve-month period, meaning that if Fisher took all twelve weeks of FMLA at one time, Fisher's FMLA leave would have concluded, at the latest, on May 7, 2021 (i.e., twelve weeks after February 12, 2021). *See* 29 C.F.R. § 825.200. Thus, it is implausible that Fisher was on FMLA leave continuously from February 12, 2021 through September 1, 2021, without interruption.

schedule an interview with the EEOC following the submission of the inquiry so that the charge could be finalized." (*Id.* ¶ 4.) The charge was filed on August 12, 2022. (*Id.* ¶ 5.)

## PROCEDURAL HISTORY

On May 8, 2023, Fisher filed the Complaint in this action. (Compl., ECF No. 1.) The case was initially assigned to United States District Judge Joan M. Azrack. (Elec. Not., May 8, 2023.) Fisher filed the Amended Complaint, the operative pleading in this action, on October 5, 2023. (Am. Compl.) On October 11, 2023, the case was reassigned to my docket. (Elec. Not., Oct. 11, 2023.) On October 19, 2023, Defendants filed a letter motion seeking a pre-motion conference in anticipation of their motion to dismiss the Amended Complaint. (ECF No. 20.) Fisher filed a response letter on November 9, 2023. (ECF No. 22.)

On November 30, 2023, I held a pre-motion conference concerning Defendants' anticipated motion to dismiss. (Min. Entry, Dec. 5, 2023.) At the conference, I set a schedule for motion to dismiss briefing, limiting Defendants' first motion to dismiss to Fisher's federal claims so that the Court can determine whether federal question jurisdiction exists in this case. (Min. Entry, Dec. 5, 2023; Elec. Scheduling Order, Dec. 5, 2023.) On March 29, 2024, pursuant to the briefing schedule set by the Court and subject to extensions sought by both parties, Defendants filed the fully-briefed Motion to Dismiss, which includes the following submissions: (1) Defendants' memorandum in support of the Motion (Mem., ECF No. 30-3); (2) Fisher's opposition brief (Opp'n, ECF No. 30-6), which attaches an affidavit by Fisher (Fisher Aff., ECF No. 30-4); and (3) Defendants' reply in further support of their Motion (Reply, ECF No. 30-7).

## LEGAL STANDARD

A complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 53 (2d Cir. 2022) (quoting *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009)). In determining whether a claim is sufficiently plausible to withstand dismissal under Rule 12(b)(6), a court "accept[s] all factual allegations as true" and "draw[s] all reasonable inferences in the plaintiff's favor." *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 113 (2d Cir. 2023). Nevertheless, a court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 307 (2d Cir. 2022). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (2009). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord Schiebel v. Schoharie Central Sch. Dist.*, 120 F.4th 1082, 1106 (2d Cir. 2024). While "detailed factual allegations" are not required, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Id.*

## DISCUSSION

For the reasons explained below, I grant in part and deny in part the Motion to Dismiss as follows. I dismiss in their entirety Fisher's claims for discrimination and hostile work environment under Title VII, discrimination and failure to accommodate under the ADA, hostile work environment and *Monell* liability under Section 1983, interference with the FMLA, and breach of collective bargaining agreement/unfair representation under Section 301. Further, I find that punitive damages are categorically unavailable against VSCHSD under Section 1983. I grant in part and deny in part dismissal of Fisher's Title VII retaliation claim. I deny dismissal of Fisher's FMLA retaliation claim. Finally, I find that this Court has supplemental jurisdiction over Fisher's state law claims.

## I.    FISHER'S AFFIDAVIT

On a Rule 12(b)(6) motion to dismiss, I must consider only "facts stated on the face of the complaint, documents appended to or incorporated in the complaint by reference, matters of which judicial notice may be taken, [and] documents not expressly incorporated by reference in the complaint that are nevertheless 'integral' to the complaint." *Clark*, 89 F.4th at 93. Fisher's affidavit does not fall under any of these categories. Nevertheless, in her opposition brief, Fisher requests that this Court treat statements in the affidavit "as an amendment to the Amended Complaint" in the event the Court determines that the pleading fails to state a *Monell* claim against VSCHSD under Section 1983 for violation of her rights to equal protection and an ADA failure-to-accommodate claim against all Defendants. (Opp'n at 19–20, 21 n.3.) Fisher does not make any arguments in her opposition brief as to how any of the allegations set forth in the affidavit address Defendants' arguments for dismissal of any other federal claims, which include: (1) disparate treatment, hostile work environment, and retaliation claims under Title VII; (2) Section 1983 claims against the Individual Defendants for violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution; (3) ADA retaliation claims; (4) FMLA interference and retaliation claims; and (5) a hybrid third-party beneficiary and breach of duty of fair representation claim under Section 301 of the LMRA. (*See* Opp'n.)

After the time to amend as of right has passed—"either upon expiration of a specified period of time in a scheduling order or upon expiration of the default period set forth in Rule 15(a)(1)(A)[, Fed. R. Civ. P.]"—a plaintiff seeking to amend a complaint must either request leave from the court or obtain the opposing party's written consent under Rule 15(a)(2). *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021); Fed. R. Civ. P. 15(a)(2). Under Rule 15(a)(2), a court should grant leave to amend "when justice so requires." Fed. R. Civ. P.

15(a)(2). Rule 15(a)(2) sets forth a lenient standard under which "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Unless there is a showing of bad faith, undue delay, futility or undue prejudice to the non-moving parties, the district court should grant leave to amend." *Adlife Mktg. & Commc'ns Co. v. Best Yet Mkt., Inc.*, No. 17-cv-2987, 2018 WL 4568801, at *1 (E.D.N.Y. Sept. 24, 2018) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, I have considered all of the factual allegations set forth in Fisher's affidavit and conclude that they do not change the conclusions set forth in this Opinion and Order. In other words, even though Fisher has not addressed whether amendment of the Amended Complaint is warranted under Rule 15(a)(2), the allegations of the Amended Complaint along with all statements set forth in Fisher's affidavit fail to state a *Monell* claim against VSCHSD under Section 1983 for violation of her rights to equal protection and an ADA failure-to-accommodate claim against any of the Defendants, as set forth in detail below. *See infra* at Discussion Sections V.b, VI.e. Moreover, the affidavit does not cure any of the deficiencies identified in this Opinion and Order regarding Fisher's other dismissed claims, which include: (1) disparate treatment, hostile work environment, and retaliation claims under Title VII; (2) Section 1983 claims against the Individual Defendants for violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution; (3) ADA retaliation claim; (4) FMLA interference and retaliation claims; and (5) a hybrid third-party beneficiary and breach of duty of fair representation claim under Section 301 of the LMRA. *See infra* at Discussion Sections II.b, III.b, IV.b, V.b, VI.c, VIII.a, VIII.b, and IX. Amendment of the Amended Complaint would therefore be futile. *See Carpenter v. Republic of Chile*, 610 F.3d 776, 781 (2d Cir. 2010) (affirming dismissal of claims where district court "constru[ed] as part of the original complaint the

proposed additional claims contained in [the plaintiff's] papers in opposition to the motion to dismiss" and found that those proposed amendments were futile).

## II.    TITLE VII DISCRIMINATION (DISPARATE TREATMENT) CLAIMS

Defendants move to dismiss Fisher's Title VII discrimination claims[6] on the following grounds. First, Defendants argue that all of Fisher's Title VII claims are time-barred because they relate entirely to incidents that occurred before October 16, 2021—300 days before Fisher's filing of a formal EEOC charge on August 12, 2022. (Mem. at 6–10.) Second, to the extent that I find that Fisher's "written inquiry" submitted to the EEOC on December 23, 2021 constitutes the "charge" off of which Title VII's limitations period is calculated, Defendants argue that all of her Title VII claims are time-barred except for claims relating to incidents that occurred on or after February 26, 2021—300 days before December 23, 2021. (*Id.*) The only alleged adverse action that occurred on or after this date is Defendants' alleged suspension of Fisher's pay and benefits on September 1, 2021. (*Id.*) Third, and separate from any statute of limitations issues, Defendants argue that Fisher fails to state a claim for discrimination under Title VII because the Amended Complaint fails to plausibly allege "sex plus" discrimination—i.e., discrimination on

---

[6] The Amended Complaint is ambiguous as to the scope of the claims Fisher brings under Title VII. The first cause of action in the Amended Complaint is titled "Title VII Sexual Harassment and Hostile Work Environment Against Valley Stream," and the sixth cause of action is titled "Title VII Retaliation Against Valley Stream." (Am. Compl. ¶¶ 57–61, 97–101.) While "sexual harassment" is actionable, it is not the term most often used under the analytical framework of Title VII, which recognizes causes of action for (1) "discrimination" (also referred to as "disparate treatment"), (2) "retaliation," and (3) "hostile work environment" (which may be discriminatory or retaliatory in nature). *See Banks v. General Motors, LLC*, 81 F.4th 242, 257–58 (2d Cir. 2023); *see also Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 174–75 (2d Cir. 2012) (analyzing allegations of "sexual harassment" as a Title VII hostile work environment claim). Based on the Amended Complaint's factual allegations, I understand that Fisher brings Title VII claims under all three theories. This section addresses her Title VII disparate treatment claims.

the basis of Fisher's sex plus her status as an unmarried person without children. (*Id.* at 10–13.)[7]

In particular, Defendants argue that the Second Circuit has never recognized that the status of *not* being married or *not* having children as "plus" characteristics falling under Title VII's protections. (*Id.* at 10–13.) Fourth, Defendants argue that, even if these are recognized "plus" characteristics, the Amended Complaint does not plead facts giving rise to an inference of discrimination on the basis of "sex plus being unmarried" or "sex plus not having children," since the Amended Complaint does not allege that Fisher was treated differently than male coworkers who are unmarried or male coworkers who do not have children. Finally, Defendants argue that Fisher did not experience an "adverse employment action" as a result of the alleged discrimination. (Mem. at 12–13.)

I address each basis for dismissal below.

**a. Statute of Limitations**

Title VII requires the plaintiff to file a "charge" with the EEOC within either 180 or 300 days of the alleged unlawful employment practice, with the longer timeframe applying when a plaintiff has first instituted proceedings with a state or local agency with authority to grant or seek relief. 42 U.S.C. § 2000e-5(e)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).[8] The EEOC charge timing requirement "operates as a statute of limitations." *Banks v.*

---

[7] It is not clear from the Amended Complaint or Fisher's briefing whether she brings her sex plus claims on the basis of two "plus" characteristics—being unmarried and not having children—separately, or one "plus" characteristic—being an unmarried person without children. In any case, as explained below, all of Fisher's sex plus discrimination theories fail.

[8] Title VII provides two statutory deadlines for filing an EEOC charge. 42 U.S.C. § 2000e-5(e)(1). In general, the plaintiff must file the EEOC charge within 180 days of the alleged unlawful employment practice. *Id.* However, where the plaintiff "has initially instituted proceedings with a State or local agency with authority to grant or seek relief from [the unauthorized employment] practice," the plaintiff must file the EEOC charge within 300 days of the alleged unlawful employment practice. *Id.*

*General Motors, LLC*, 81 F.4th 242, 259 (2d Cir. 2023). Here, the parties agree that the 300-day limitations period applies. (*See* Mem. at 6–10; Opp'n at 10–13; *see also* Am. Compl. ¶¶ 3–8 (alleging that Fisher's initial written inquiry was received by both the EEOC and the New York State Division of Human Rights, and that the formal EEOC charge was simultaneously filed with both agencies).) Importantly, the assertion that Title VII claims are time-barred for failure to timely exhaust administrative remedies is an affirmative defense, for which the defendant bears the burden of proof. *Hardaway v. Hartford Public Works Dep't*, 879 F.3d 486, 490–91 (2d Cir. 2018).

Title VII does not define what constitutes a "charge." *See generally* 42 U.S.C. § 2000e (Title VII "Definitions" section failing to define "charge"). In *Federal Express Corporation v. Holowecki*, the Supreme Court held that an intake questionnaire may constitute a charge if it (1) contains the information required by the relevant EEOC regulations[9] and (2) can be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." 552 U.S. 389, 402 (2008); *see also Winston v. Mayfair Care Ctr., Inc.*, No. 09-cv-4792, 2011 WL 10045251, at *4 n.1 (S.D.N.Y. Mar. 4, 2011) (explaining that, although *Holowecki* concerned an Age Discrimination in Employment Act ("ADEA") claim, courts have consistently applied the *Holowecki* analysis in Title VII cases, in light of the fact that neither the ADEA nor Title VII defines the term "charge"). Still, many inquiries filed with the EEOC are not charges, but rather requests for

---

[9] 29 C.F.R. § 1601.12(a) provides that a charge "should contain" the following: (1) the name and contact information of the person making the charge; (2) the name and contact information of the person against whom the charge is made; (3) a "clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices"; (4) the approximate number of employees of the relevant employer; and (5) a "statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced."

information; in *Holowecki*, the Supreme Court cited data indicating that "[o]f about 175,000 inquiries the agency receives each year, it dockets around 76,000 of these as charges . . . . Even allowing for errors in the classification of charges and noncharges, it is evident that many filings come from individuals who have questions about their rights and simply want information." *Holowecki*, 552 U.S. at 401.

Notwithstanding the 300-day limitations period, "a continuing violation may be found where there is proof of specific ongoing discriminatory polic[i]es or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson*, 23 F.3d 694,704 (2d Cir. 1994); *see also Tassy v. Buttigieg*, 51 F.4th 521, 532 (2d Cir. 2022) ("The doctrine applies to claims composed of a series of separate acts that collectively constitute one unlawful practice . . ."); *King v. Aramark Servs. Inc.*, 96 F.4th 546, 559 (2d Cir. 2024); *Massaro v. New York City Dep't of Educ.*, No. 21-266-CV, 2022 WL 1788203, at *2 (2d Cir. June 2, 2022) (summary order). Courts have emphasized that the "continuing violation" doctrine does not apply to "discrete unlawful acts, even where those discrete acts are part of a serial violation," but rather to "claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Tassy*, 51 F.4th at 532. If the court finds that the "continuing violation" doctrine applies, it "must then consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred." *Banks*, 81 F.4th at 259.

With respect to discrimination claims under Title VII, "discrete acts" not covered by the "continuing violation" doctrine—"such as termination, failure to promote, denial of transfer, or refusal to hire"—are "easy to identify." *Morgan*, 536 U.S. at 114. "Each incident of

discrimination . . . constitutes a separate actionable unlawful employment practice" under Title VII. *Id.* "Discrete acts of this sort, which fall outside the limitations period, cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period." *Chin v. Port Auth. of N.Y. and N.J.*, 685 F.3d 135, 157 (2d Cir. 2012). By contrast, district courts have found that a continuing violation exists where the relevant acts are part of a continuous policy or practice of discrimination. On this point, Fisher cites to *Walsh v. Scarsdale Union Free School District*, in which a district court found that the "final act" related to the defendant's "continuous policy and practice of discrimination" was the plaintiff's "decision to resign." 375 F. Supp. 3d 476, 480 (S.D.N.Y. 2019).

Here, at the pleading stage, the statute of limitations bars most, but not all, of the conduct challenged in Fisher's Title VII discrimination claims. As an initial matter, Defendants, who bear the burden to prove their statute of limitations affirmative defense, have not shown at the pleading stage that the formal charge filed on August 12, 2022, and not the informal "written inquiry" submitted on December 23, 2021, is the relevant "charge" for purposes of calculating the 300-day limitations period. *See Hardaway*, 879 F.3d at 490–91. Fisher did not attach either the December 23, 2021 written inquiry or the August 12, 2022 formal EEOC charge to the Amended Complaint or her briefing. But it was Defendants' burden to provide the Court with these documents as integral to the Amended Complaint under *Clark*, 89 F.4th at 93, in order to demonstrate that, based on the pleadings alone, the December 23, 2021 written inquiry does *not* constitute a charge under *Holowecki* and that, therefore, the statute of limitations has run on *all* of Fisher's claims.[10] The full record developed in discovery may very well support Defendants'

---

[10] Although discovery was not completed at the time the parties briefed this instant Motion, VSCHSD, as Fisher's employer, was likely able to access Fisher's entire charge file through the

position that the August 12, 2022 charge is the relevant document for the purpose of calculating the 300-day limitations period. However, that determination cannot be made on the pleadings where the December 23, 2021 informal written inquiry is not attached to the Amended Complaint and was not otherwise provided to the Court.

Accordingly, for the purposes of this Motion to Dismiss, I accept as true the Amended Complaint's allegation that December 23, 2021 "is the relevant filing date" of the charge because the EEOC issued a charge number following receipt of Fisher's written inquiry on that date and because the August 12, 2022 formal EEOC charge contains only "amendments and clarifications" that "relate back to the original date of December 23, 2021." (Am. Compl. ¶¶ 3, 6–7.) The Amended Complaint thus plausibly alleges that the December 23, 2021, EEOC charge triggered the 300-day statute of limitations. Accordingly, Fisher's Title VII discrimination claims are timely to the extent that they concern alleged adverse action(s) that occurred on or after February 26, 2021 (i.e., within 300 days of December 23, 2021).

Under this limitations period, the only timely incident of discrimination alleged in the Amended Complaint is Defendants' decision to suspend Fisher's pay and benefits on September 1, 2021 (Am. Compl. ¶ 48).[11] Further, the continuing violation doctrine does not apply to

---

federal Freedom of Information Act ("FOIA") after Fisher filed the original Complaint in this action on May 8, 2023. *See* U.S. Equal Employment Opportunity Commission, Questions and Answers: FOIA Requests for Charge Files (last accessed Aug. 20, 2025) (providing that the employer may obtain a copy of the charge file after "[t]he Notice of Right to Sue has been issued and the plaintiff has "filed a complaint in court on the charge").

[11] As noted, *supra* note 3, the Amended Complaint is inconsistent as to the date on which Defendants assigned Fisher to her new position, which required her to travel to different buildings. Paragraph 30 alleges that this occurred in June 2019, while Paragraph 33 alleges that this occurred two years later in June 2021. Given that the Amended Complaint alleges that Fisher's mental health suffered as a result of working in her new position (Am. Compl. ¶ 41–43) and that, separately, she went on FMLA leave starting February 12, 2021 (Am. Compl. ¶ 45) and had her pay and benefits suspended on September 1, 2021 (Am. Compl. ¶ 48), it is likely that the

Fisher's Title VII discrimination claim because this single timely alleged incident is a "discrete act" and is not part of a claim that "by [its] nature accrue[s] only after the plaintiff has been subjected to some threshold amount of mistreatment." *Tassy*, 51 F.4th at 532; *see also Harrison v. N. Shore Univ. Hosp.*, No. 04-cv-2033, 2005 WL 8160921, at *3 (E.D.N.Y. Sept. 14, 2005) (holding that an alleged wrongful suspension is a "discrete act" not subject to the continuing violation doctrine).[12] The suspension of Fisher's pay and benefits is a discrete act different in kind than the alleged untimely incidents, which concern (1) the assignment of Fisher to a teaching position requiring travel in between school buildings and to do additional work, (2) bullying by co-workers in the form of verbal comments, (3) two incidents in which co-workers stole her car keys, and (4) one incident in which her flash drive contents were deleted. Moreover, the Amended Complaint does not plausibly allege that any of this conduct took place between February 12, 2021 and Fisher's suspension on September 1, 2021.[13]

---

reference to June 2021 in Paragraph 33 is a typographical error. To the extent that it is not, it is implausible that Fisher was assigned in June 2021 to her new position, as she was already on FMLA leave by this time.

[12] The parties do not address the additional requirement that the "continuing violation [be] clearly asserted both in the EEOC filing and in the complaint." *Miller v. Int'l Telephone & Telegraph Corp.*, 755 F.2d 20, 25 (2d Cir. 1985); *see also Fitzgerald v. Henderson*, 251 F.3d 345, 360 (2d Cir. 2001) ("However, a plaintiff may not rely on a continuing violation theory of timeliness unless she has asserted that theory in the administrative proceedings."). Since neither party has provided the EEOC charge file, I am unable to determine whether Fisher invoked the continuing violation doctrine in the underlying administrative proceedings. This is immaterial, however, since I find that, in any case, the continuing violation doctrine does not apply to Fisher's Title VII or ADA claims. *See* Discussion Section II.a, III.a, IV.a, V.a.

[13] The Amended Complaint alleges that Fisher's "fellow teachers openly mocked her, laughed at her, and made sexist remarks at her expense" "on at least a weekly-to-daily basis throughout the period between 2014 and *the end of her employment*." (Am. Compl. ¶ 36 (emphasis added).) However, Fisher went on FMLA leave beginning on February 12, 2021, and the Amended Complaint contains no allegation that Fisher returned to work before her suspension without pay and benefits on September 1, 2021. (*Id.* ¶ 45.) In fact, the Amended Complaint alleges that Fisher was still out on FMLA leave at the time of the September 1, 2021 suspension. (*Id.* ¶ 49.)

Fisher's reliance on *Walsh* to argue that the continuing violation doctrine applies to her Title VII discrimination claims is misplaced. In that case, the district court held that the continuing violation doctrine applied to the plaintiff's otherwise untimely allegations of discrimination because the plaintiff's timely resignation constituted the "final act related to the discrimination" alleged. *Walsh*, 375 F. Supp. 3d at 480. The court relied on the following language from the Second Circuit's decision in *Miller v. International Telephone & Telephone Corporation*, 755 F.2d 20, 25 (2d Cir. 1983): "When employees are hired or refused employment pursuant to a continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." But, in *Miller*, the Second Circuit did not hold that a plaintiff's ultimate termination is necessarily "the last discriminatory act" to which the continuing violation doctrine applies; rather, it held that courts must look to the timely final act as part of a "continuous practice and policy of discrimination" for the purposes of determining the statute of limitations. *Miller*, 755 F.2d at 25. There is no such "continuous practice and policy" here. Fisher's reading of *Walsh* and *Miller* is squarely contradicted by the Supreme Court's 2003 decision in *Morgan*, which makes clear that the continuing violation doctrine does *not* apply even to serial "discrete acts," such as termination of employment. *Morgan*, 536 U.S. at 114 (reversing an appellate court's application of the continuing violations doctrine to "serial violations" and rejecting the notion that "so long as one act falls within the charge filing period, discriminatory and retaliatory acts that are plausibly or sufficiently related to that act may also be considered for the purposes of liability").

---

Nor does the Amended Complaint allege that Fisher's co-workers engaged in the alleged harassing behavior while she was not working (and thus not present at VSCHSD). Therefore, to the extent that the Amended Complaint alleges that Fisher experienced this alleged bullying after February 12, 2021, such allegations are implausible when taking as true the allegations of the Amended Complaint.

In summary, based on the pleadings, I apply the December 23, 2021 charge date, which means that the statute of limitations cutoff is February 26, 2021. Under this analysis, Fisher's only timely Title VII discrimination claim concerns her allegation that Defendants engaged in disparate treatment when they unlawfully suspended her pay and benefits beginning on September 1, 2021. It is possible, however, that discovery will reveal that the charge date is August 12, 2022 and that the statute of limitations cutoff is October 16, 2021, which would mean that *all* of Fisher's Title VII claims are time barred, including her disparate treatment claim. Accordingly, the Court respectfully requests that Magistrate Judge Shields order expedited discovery specifically directed towards the determination of whether the charge date is December 23, 2021 or August 12, 2022.

### b.  Failure to State a Claim

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Generally speaking, a plaintiff bringing a disparate treatment claim must establish a prima facie case of discrimination by showing that (1) "she is a member of a protected class," (2) "she is qualified for her position," (3) "she suffered an adverse employment action," and (4) "the circumstances give rise to an inference of discrimination." *Banks*, 81 F.4th at 270. At the motion to dismiss stage, the plaintiff only needs to plausibly allege that she "is a member of a protected class, was qualified, suffered an adverse employment action, and has *at least minimal support* for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 310 (2d Cir. 2015) (emphasis added).

23

The protected classes enumerated under Title VII are "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). With respect to Title VII and similar claims under other federal civil rights laws, courts have employed the concept of "plus" discrimination as a "heuristic" to account for the fact that an individual can experience discrimination on the basis of a protected class "even when not all members of [that individual's] disfavored [protected] class are discriminated against." *Back v. Hastings on Hudson Union Free School Dist.*, 365 F.3d 107, 118 (2d Cir. 2004) (Section 1983 discrimination case applying the same standard as the standard applied in Title VII discrimination cases). "Sex plus discrimination occurs when an individual is subjected to disparate treatment based on gender 'considered in conjunction with a second characteristic.'" *Lax v. Woodmere Blvd. Owners, Inc.*, 812 F. Supp. 2d 228, 234 (E.D.N.Y. 2011) (quoting *Fisher v. Vassar College*, 70 F.3d 1420, 1433 (2d Cir. 1995)). Critically, while the Second Circuit has recognized sex plus discrimination, there must still be a causal connection between the plaintiff's alleged membership in a protected class and the alleged discrimination. *See Lax*, 812 F. Supp. 3d at 234. In other words, a plaintiff alleging discrimination solely on the basis of a "plus" characteristic, irrespective of that plaintiff's sex, has not stated a claim for sex plus discrimination because such discrimination would not be on the basis of membership in a protected class enumerated in Title VII. *See* 42 U.S.C. § 2000e-2(a)(1) (making it unlawful to discriminate against an individual "*because of* such individual's . . . sex" (emphasis added)).

The Second Circuit has held that secondary characteristics for sex plus discrimination are those that bear on gender stereotypes—in other words, an individual may experience discrimination based on "the supposition that a[n] [individual] *will* conform to a gender stereotype . . . [or] the supposition that a[n] [individual] is unqualified for a position because [that individual] does *not* conform to a gender stereotype." *Back*, 365 F.3d at 119 (emphasis in

original); *see also Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 107 (2d Cir. 2018) (recognizing that "it is well-settled that gender stereotyping violates Title VII's prohibition on discrimination 'because of . . . sex'"), *aff'd*, *Bostock v. Clayton County, Georgia*, 590 U.S. 644 (2020). Courts within this Circuit have found sex plus discrimination to apply, for example, to: (1) Section 1983 claims brought by a female school psychologist alleging that she was denied tenure because her employer thought that, as a young mother, she was not sufficiently dedicated to the job, *Back*, 353 F.3d at 120; (2) Fair Housing Act claims brought by a male prospective homeowner alleging that he was denied the opportunity to purchase a unit in a cooperative building because, as an unmarried man, he was perceived as an individual who might "thr[ow] loud parties and smoke[] marijuana," *Lax*, 812 F. Supp. 2d at 232; and (3) Title VII claims brought by a female schoolteacher alleging that she was given negative performance reviews based on her status as a widowed mother, *East v. Roosevelt Union Free School Dist.*, No. 19-cv-3709, 2020 WL 13753159, at *10 (E.D.N.Y. July 31, 2020) (report and recommendation, settled before final disposition).

Concerning the "adverse employment action" requirement, under the Supreme Court's recent decision in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), a plaintiff bringing a Title VII discrimination claim "does not have to show . . . that the harm incurred was significant[,] . . . serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Id.* at 355. Rather, the plaintiff only needs to show "some harm respecting an identifiable term or condition of employment"—i.e., the plaintiff must have been "left [] worse off" but not necessarily "significantly so." *Id.* at 355, 359.

Finally, with respect to the "inference of discrimination" requirement, the plaintiff may allege direct evidence of discrimination; in the absence of such direct evidence, "what must be

25

plausibly supported by facts alleged in the complaint is . . . at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311. While a Title VII sex plus discrimination claim is "stronger" when the plaintiff "demonstrates that the defendants treated similarly situated [members of the opposite sex] differently," the complaint need not specifically allege these comparators. *Back*, 365 F.3d at 121. "In making the plausibility determination" on a motion to dismiss under Rule 12(b)(6), "the court must be mindful of the 'elusive' nature of intentional discrimination"; indeed, plaintiffs often "must rely on 'bits and pieces' of information to support an inference of discrimination"— in other words, a "'mosaic' of intentional discrimination." *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 86 (2d Cir. 2015).

Here, the Amended Complaint fails to state a claim for sex plus discrimination on the basis of Fisher's sex plus her status as an unmarried person without children.[14] As an initial matter, I note that, at least in certain circumstances, a woman's status as an unmarried person without children may sufficiently implicate gender stereotypes to qualify as a secondary characteristic subject to the sex plus discrimination analysis. The Second Circuit has held that sex plus discrimination applies equally to "the supposition that a woman *will* conform to a gender stereotype" as to "the supposition that a woman is unqualified for a position because she does *not* conform to a gender stereotype." *Back*, 365 F.3d at 119. While the Second Circuit has not expressly held in a published opinion that being unmarried without children is a qualifying "plus" characteristic—or that being unmarried and not having children are recognized as separate

---

[14] As noted above, *supra* note 7, it is not clear from the Amended Complaint and Fisher's briefing whether she alleges one plus characteristic (being unmarried without children) or two plus characteristics (being unmarried and not having children). In either case, the Amended Complaint fails to state a claim for sex plus discrimination.

"plus" characteristics—such a finding is in-line with the Second Circuit's recognition of sex plus discrimination claims brought by a woman *with* children, *Back*, 353 F.3d at 121, and a district court's recognition of claims brought by an unmarried man, *Lax*, 812 F. Supp. 2d at 231. Accordingly, for the purposes of this Motion, I accept Fisher's contention that her status as an unmarried woman without children may be analyzed under the "sex plus" discrimination framework.

Nevertheless, as previously noted, the only timely alleged adverse action potentially relating to Fisher's discrimination claim is Defendants' decision to suspend Fisher's pay and benefits on September 1, 2021. (Am. Compl. ¶ 48.) Regardless of what inferences may be fairly drawn concerning other, untimely actions alleged, the Amended Complaint does not plausibly allege that Defendants took *the specific adverse action* of suspending Fisher's pay and benefits with an intent to discriminate against Fisher based on her sex *plus* her status as an unmarried person without children. In fact, the Amended Complaint alleges that this action was "done as a means of retaliating against" Fisher, not as disparate treatment. (Am. Compl. ¶ 50.)

Fisher's reliance on *Trezza v. Hartford, Inc.*, No. 98-cv-2205, 1998 WL 912101 (S.D.N.Y. Dec. 30, 1998) is misplaced. (*See* Opp'n at 13–15.) There, the district court held that a Title VII sex plus discrimination claim does not fail at the motion to dismiss stage simply because the defendant identifies "someone of the *same sex* as plaintiff but without the added characteristic" who did not experience the same alleged discrimination. 1998 WL 912101, at *6 (emphasis added). By contrast, with respect to the allegations that Defendants assigned Fisher an excessive workload and required her to travel between buildings and that her colleagues harassed her (incidents which, in any event, are untimely under the statute of limitations applicable to Title VII discrimination claims), the issue is not that Defendants have identified married women

27

with children who did not face the same discrimination. Rather, the issue is that the Amended Complaint specifically alleges that Fisher was singled out for mistreatment among essentially all other employees. (*See* Am. Compl. ¶ 23 (alleging that Fisher was treated in a manner "that was not comparable to those of male teachers or other female teachers (most of whom were, unlike Ms. Fisher, married with children")).) In effect, the Amended Complaint alleges that Fisher faced negative treatment purely because she is unmarried and does not have children, *regardless of her sex*. But discrimination on the basis of marital or parental status alone, without a nexus to an enumerated protected class, is not actionable under Title VII.

Thus, to the extent that Fisher intends to bring a Title VII discrimination claim on the basis of the September 1, 2021 suspension without pay and benefits or the assignment of Fisher to a role requiring travel between buildings and an excessive workload, this claim is dismissed. Accordingly, I do not address the other elements required to state a plausible disparate treatment claim—Fisher's membership in a protected class, her qualifications for her job, or the presence of an adverse action.

## III. TITLE VII HOSTILE WORK ENVIRONMENT CLAIM

Defendants move to dismiss Fisher's Title VII hostile work environment claim on the same statute of limitations grounds discussed above. Further, Defendants argue that the Amended Complaint does not allege harassment that is sufficiently "severe or pervasive" to state a claim. (Mem. at 13–14.) Finally, as discussed above in the context of Fisher's Title VII discrimination claim, Defendants also argue that the Amended Complaint does not plausibly allege that Fisher faced the alleged harassment "because of" a protected characteristic because (1) Fisher's "status as an unmarried woman without children is not protected" under Title VII

28

and (2) Fisher did not "plead that she was treated differently than men without children, or men that were unmarried." (*Id.* at 14.) I address each argument below.

### a. Statute of Limitations

Title VII hostile work environment claims are governed by the same 300-day time limitation requirement described above. *Banks*, 81 F.4th at 259; *see also supra* Discussion Section II.a.

In determining whether alleged incidents contributing to a hostile work environment that occurred outside the statute of limitations are actionable, "[i]t does not matter . . . that some of the component acts of the hostile work environment fall outside the statutory time period"; so long as "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Banks*, 81 F.4th at 260; *see also Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) ("A charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice *and at least one act falls within the time period*." (quoting *Morgan*, 536 U.S. at 122) (emphasis added)).

Despite this relatively lenient standard, "the timely incident must be *sufficiently related* to the prior events so that they can be said to be part of the 'same' hostile work environment." *Sanderson v. N.Y. State Elec. & Gas Corp.*, 560 F. App'x 88, 91 (2d Cir. 2014) (citing *Morgan*, 526 U.S. at 118) (emphasis added); *see also Dziedzic v. State Univ. of New York at Oswego*, 648 F. App'x 125, 127–28 (2d Cir. 2016) (holding that the "continuing violation" doctrine did not apply where untimely sexual joke "was made by different co-workers in a different section of the . . . department than the [timely] harassment" alleged); *Staten v. City of New York*, 653 F. App'x 78, 80 (2d Cir. 2016) (holding that the "continuing violation" doctrine did not apply

where the timely claims "focused primarily on complaints about specific job assignments, orders that [the plaintiff] disagreed with, or issues with the department confirming that [the plaintiff] complied with internal rules," while the untimely claims "alleged derogatory comments, unjust punishment for failing to secure his locker, and withholding of PBA cards"); *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 77–78 (2d Cir. 2010) (holding that the "continuing violation" doctrine did not apply where timely claims concerned an inappropriate comment about a sleepover and untimely claims concerned "lewd" comments made by individuals in a different department and "sector of the building"); *but see Sooroojballie v. Port Auth. of N.Y. and N.J.*, 816 F. App'x 536, 541–42 (2d Cir. 2020) (holding that the "continuing violation" doctrine applied where "non-discrete acts" of "lack of training, evaluations, and discipline" occurred both inside and outside of the statutory period). While the Second Circuit has not yet endorsed a specific test for determining whether alleged timely and untimely harassing acts are "sufficiently related," district courts have considered factors including "(1) whether the timely and untimely harassment is of a similar nature, (2) whether the same individuals perpetuated the harassment, (3) the frequency and temporal proximity of the acts, and (4) whether the employer took any intervening remedial action." *Bonterre v. City of New York*, No. 18-cv-745, 2021 WL 4060358, at *3 (S.D.N.Y. Sept. 7, 2021).

I have already found that the only timely alleged adverse action by Defendants is their decision to suspend Fisher's pay and benefits beginning on September 1, 2021. *See supra* Discussion Section II.a; Am. Compl. ¶ 48. As I explain in more detail below, Discussion Section III.b, the Amended Complaint does not plausibly allege that this adverse action relates to Fisher's hostile work environment claim *at all*—rather, it only alleges this action in relation to her retaliation claim. To the extent that Fisher argues that this sole timely alleged adverse action

30

forms part of her hostile work environment claim, the continuing violation doctrine does not apply because this incident is not "sufficiently related to the prior events so that they can be said to be part of the 'same' hostile work environment." *Sanderson*, 560 F. App'x at 91. Notably, this incident (suspending Fisher's compensation) and the alleged untimely incidents (overloading Fisher with work, subjecting her to verbal bullying, stealing her car keys, and making her work a position requiring excessive travel between different locations) are not of a similar nature. *Bonterre*, 2021 WL 4060358, at *3. Further, there is a large temporal gap between the timely incident, which occurred on September 1, 2021, and all of the other alleged incidents which took place prior to the commencement of Fisher's FMLA leave on February 12, 2021. (Am. Compl. ¶¶ 45, 48.) The Amended Complaint does not allege that any bullying behavior by co-workers— such as verbal comments or the two incidents in which co-workers stole Fisher's car keys and the incident in which a co-worker deleted the contents of her flash drive—took place after she went on FMLA leave on February 12, 2021. Moreover, there is a further temporal and substantive distinction between the timely adverse action (suspension without pay and benefits in September 2021) and the other alleged incidents of harassment because Fisher had been on leave for approximately seven months at the time her pay and benefits were suspended. (Am. Compl. ¶ 45.) The Amended Complaint is devoid of any allegations that, during this seven-month period, Fisher interacted with co-workers, was overloaded with work, or was required to travel between school buildings.

Therefore, the only alleged incident for which Fisher may bring a hostile work environment claim is Defendants' September 1, 2021 decision to suspend Fisher's pay and benefits.

b.  **Failure to State a Claim**

A hostile work environment claim under Title VII requires a plaintiff to show that her workplace was "so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 101 (2d Cir. 2020); *see also Oncale v. Sundowner Offshore Servs. Inc.*, 523 U.S. 75, 81 (1998) (holding that Title VII is not "a general civility code" but rather "forbids only behavior so objectively offensive as to alter the conditions of the victim's employment"). This inquiry "involves both objective and subjective elements." *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009). To prevail on a hostile work environment claim, the plaintiff must show (1) that the alleged conduct was "severe or pervasive enough to create an *objectively* hostile or abusive work environment" and (2) that the plaintiff "*subjectively* perceive[d] that environment to be abusive." *Id.* (emphasis added). In the objective inquiry, courts assess the totality of circumstances, weighing various factors, including: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007). The plaintiff must prove that she faced "harassment of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse"; in this inquiry, however, the Second Circuit has cautioned against "setting the bar too high." *Id.*

The plaintiff must also plausibly allege that she faced a hostile work environment *because of* her sex. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) ("We must also consider the extent to which the conduct occurred because of the plaintiff's sex."); *see also* 42 U.S.C. § 2000e-2(a)(1) (prohibiting adverse employment actions "because of

such [employee's] race, color, religion, sex, or national origin"). Causation may be shown by evidence of "harassment in such [sex]-specific and derogatory terms as to make it clear that the harasser is motivated by general hostility to the presence of [individuals of a particular sex] in the workplace, or by offering some circumstantial or other basis for inferring that incidents [sex]-neutral on their face were in fact discriminatory." *Tassy*, 51 F.4th at 533.

Here, Fisher's sole timely allegation relates to retaliation, not to hostile work environment. Indeed, the allegation that Defendants suspended Fisher's pay and benefits while she was on FMLA leave does not allege a work environment that was "so severely permeated with discriminatory intimidation, ridicule, and insult." *Agosto*, 982 F.3d at 101. Nor has she alleged that the suspension was because of her sex plus another characteristic in light of the Amended Complaint's allegations that she was treated differently than all other teachers, irrespective of their gender, "*most* of whom were, unlike Ms. Fisher, married with children." (Am. Compl. ¶ 23 (emphasis added); *see also id.* ¶¶ 24–26.) Accordingly, the Amended Complaint fails to state a hostile work environment claim under Title VII.

## IV.    TITLE VII RETALIATION CLAIM

Defendants move to dismiss Fisher's Title VII retaliation claim on the same statute of limitations grounds discussed above. (Mem. at 6–10.) Defendants also seek dismissal of Fisher's retaliation claim on the theory that, since discrimination on the basis of sex plus Fisher's status as an unmarried woman without children is not actionable under Title VII, Fisher's internal complaints about this alleged discrimination were not protected activities for the purposes of a retaliation claim. (*Id.* at 15–16.) Finally, Defendants argue that Fisher's allegation that her September 2021 suspension was carried out in retaliation for her taking FMLA leave is

implausible because her "FMLA leave was long expired by September 2021." (*Id.*) I address these bases for dismissal below.

### a.  Statute of Limitations

Title VII retaliation claims are governed by the same 300-day time limitation requirement and continuing violation analysis described above in the context of Fisher's Title VII discrimination claim. *Banks*, 81 F.4th at 259; *see also supra* Discussion Section II.a. Accordingly, the only timely alleged adverse action is Defendants' decision to suspend Fisher's pay and benefits on September 1, 2021. *Supra* Discussion Section II.a.

### b.  Failure to State a Claim

Under Title VII's antiretaliation provision, it is unlawful for an employer to "discriminate against an [employee] . . . because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3. To state a claim for retaliation, a plaintiff must allege that "(1) [she] engaged in protected activity, (2) the defendant was aware of that activity, (3) [the plaintiff] was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and the materially adverse action or actions." *Carr*, 76 F.4th at 180 (Title VII retaliation case citing 42 U.S.C. § 2000e-3(a)). Concerning the protected activity requirement, it is well-established that protected activities include not only formal charges of discrimination, but also broadly any "oppos[ition] [to] any practice made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e–3(a); *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 48 (2d Cir. 2012). For the plaintiff to have engaged protected activity, the plaintiff "need not prove that her underlying complaint of discrimination had merit," *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012), but only

that she had a "good faith, reasonable belief that the underlying challenged actions of the employer violated [Title VII]." *Gregory v. Daly*, 243 F.3d 687, 701 (2d Cir. 2001). Concerning the "adverse action" requirement, an action is "materially adverse" if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Carr*, 76 F.4th at 179. Finally, concerning the causation requirement, a plaintiff may show causation through "direct evidence" of "retaliatory intent." *Banks*, 81 F. 4th at 277. At the motion to dismiss stage, the plaintiff may also rely on temporal proximity between the alleged protected activity and the alleged retaliation to state a claim for retaliation. *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013).

The Amended Complaint plausibly alleges a retaliation claim with respect to the one timely alleged adverse action: Defendants' decision to suspend Fisher's pay and benefits on September 1, 2021. (Am. Compl. ¶ 48.)

First, the Amended Complaint plausibly alleges that Fisher engaged in multiple protected activities: (1) she had meetings with the VSCHSD administration "every year since 2014," in which she "expressed her concerns about . . . the unfair and excessive amount of work she was expected to do simply because she was an unmarried woman with children" and "the constant bullying and harassment she faced from her coworkers" (*id.* ¶ 37); (2) she met with representatives of Local 1633 in September 2020, March 2021, and April 2021 to discuss her concerns (*Ii.* ¶ 51); and (3) she had a phone call with the Local 1633 president on April 26, 2021 regarding these same issues (*id.* ¶ 53.) Defendants' argument that Fisher did not engage in any protected activity because her underlying claim of sex plus discrimination is non-meritorious misstates the law, which only requires that the complainant had a "good faith, reasonable belief that the underlying challenged actions of the employer violated [Title VII]." *Gregory*, 243 F.3d

35

at 701. Here, the Amended Complaint sufficiently pleads that Fisher had a good-faith basis to believe that the conduct about which she complained violated Title VII. (*See* Am. Compl. ¶ 37 (alleging that Fisher raised her concerns that she faced discrimination based on her sex and status as an unmarried woman without children in meetings with the VSCHSD administration in the first instance); *id.* ¶ 51 (alleging that Fisher subsequently met with Local 1633 representatives regarding her concerns).)

Second, the Amended Complaint plausibly alleges that Defendants were aware of at least some of the alleged protected activities. In particular, the Amended Complaint specifically alleges that she met with the VSCHSD administration "every year" since 2014 to discuss her belief that the treatment she faced was "simply because she was an unmarried woman without children." (Am. Compl. ¶ 37.) Thus, "Defendants were put on direct notice of discrimination she faced at least six (6) times over the years since 2014." (*Id.* ¶ 39.) The Amended Complaint does not expressly allege that Defendants were aware of Fisher's communications with Local 1633 representatives and the president. It does, however, allege that the Local 1633 president informed Fisher that she was "on a slippery slope with the District," which suggests that the union and Defendants had some degree of communication regarding Fisher's actions. (*Id.* ¶ 52.)

Third, the only timely alleged retaliatory incident, the suspension of Fisher's pay and benefits, satisfies the adverse action requirement, as the loss of one's income and benefits plainly may "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *See Carr*, 76 F.4th at 179.

Fourth, the Amended Complaint plausibly alleges a causal relationship between the alleged protected activities and Defendants' decision to suspend Fisher's pay and benefits. In particular, the Amended Complaint plausibly alleges facts showing retaliatory intent—for

example, the Local 1633 president's decision to discourage Fisher from lodging further complaints because she was on "a slippery slope with the District." (Am. Compl. ¶ 52.) Moreover, the temporal proximity between the April 26, 2021 call with the Local 1633 president and the September 1, 2021 suspension of Fisher's pay and benefits plausibly alleges a causal connection at the pleading stage. Am. Compl. ¶¶ 48, 52; *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) ("Though this Court has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, we have previously held that five months is not too long to find the causal relationship.").

Defendants' arguments for dismissal of Fisher's retaliation claim center on the Amended Complaint's allegation that Defendants suspended Fisher's pay and benefits in "retaliation for her FMLA leave taken in February 2021," and I address that separate claim below, Discussion Section VIII.b. (Mem. at 16.) But the Amended Complaint also alleges that Defendants suspended Fisher's pay and benefits "as a means of retaliating against her for complaining about their years-long campaign of discrimination and unlawful, hostile treatment." (Am. Compl. ¶ 50.) Defendants cite no authority suggesting that Fisher cannot bring retaliation claims under both Title VII and the FMLA, or that, at the pleading stage, Fisher's Title VII retaliation claim cannot go forward even if the FLMA retaliation claim does not withstand a Rule 12(b)(6) motion.

Accordingly, Fisher's Title VII retaliation claim survives Defendants' motion to dismiss.

## V.    ADA CLAIMS

Defendants move to dismiss Fisher's claims of disparate treatment and failure to accommodate under the ADA on multiple grounds. First, Defendants argue that Fisher's ADA

claims are time-barred under the same analysis applied to Fisher's Title VII discrimination claims. Mem. at 10–13; Discussion Section II.a. Second, Defendants argue that the Amended Complaint does not allege that Fisher had a "disability" as defined in the ADA. Third, Defendants argue that the Amended Complaint does not satisfy the requirements of an ADA reasonable accommodation claim, specifically the requirement that Fisher must have requested a reasonable accommodation for her disability and that Defendants denied Fisher that reasonable accommodation. (Mem. at 18–20.) I address each argument below.

### a. Statute of Limitations

ADA claims are governed by the same 300-day time limitation requirement and continuing violation analysis described above in the context of Fisher's Title VII discrimination claim. *Purcell v. N.Y. Institute of Tech. – College of Osteopathic Medicine*, 931 F.3d 59, 63 n.16 (2d Cir. 2019) (affirming longstanding rule that discrimination claims under the ADA "are subject to a 180-day or 300-day time limit within which a plaintiff must file a complaint with the EEOC"); *see also supra*, Discussion Section II.a. Accordingly, the only timely alleged adverse action is Defendants' decision to suspend Fisher's pay and benefits on September 1, 2021. *Supra* Discussion Section II.a.

### b. Failure to State a Claim

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . [the] terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).[15] The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42

---

[15] VSCHSD does not dispute that it is a "covered entity" under the ADA. (*See generally* Mem.)

U.S.C. § 12102(1); *see also Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F. 4th 159, 166–67 (2d Cir. 2024).

To survive a motion to dismiss, a plaintiff bringing an ADA disparate treatment claim must plausibly allege that "(1) [her] employer is subject to the ADA; (2) [she] was disabled within the meaning of the ADA; (3) [she] was otherwise qualified to perform the essential functions of h[er] job, with or without reasonable accommodation; and (4) [she] suffered adverse employment action because of [her] disability." *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020); *see also Patel v. NYU Langone Hosps.*, No. 20-112-cv, 2021 WL 4852426, at *2 (2d Cir. 2021) (applying *Woolf* standard on motion to dismiss). Accordingly, at the motion to dismiss stage, facts in the complaint must plausibly support "that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

To state a claim for failure to provide a reasonable accommodation under the ADA, a plaintiff must plausibly allege that "(1) h[er] employer is subject to the ADA; (2) [s]he was disabled within the meaning of the ADA; (3) [s]he was otherwise qualified to perform the essential functions of h[er] job, with or without reasonable accommodation; and (4) h[er] employer refused to make a reasonable accommodation." *Tudor v. Whitehall Central Sch. Dist.*, 132 F.4th 242, 246 (2d Cir. 2025) (quoting *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020)).

Both of Fisher's ADA claims fail. As a threshold matter, the Amended Complaint fails to allege that Fisher suffered from a "disability" as defined by the ADA. Specifically, the Amended Complaint alleges that Fisher suffered from "fatigue, stress and anxiety [that] left her unable to do her job." (Am. Compl. ¶ 45.) Fisher cites no authority, and I have found none, supporting the

proposition that "fatigue" and "stress" caused by an alleged excessive workload constitutes a "disability" under the ADA. (*See generally* Opp'n at 20–21.) An anxiety disorder may, in certain circumstances, qualify as a "disability." *See*, *e.g.*, *Cody v. Cnty. of Nassau*, 577 F. Supp. 2d 623, 639 (E.D.N.Y. 2008) (holding that "generalized anxiety disorder" preventing the plaintiff from working constitutes a "disability"). Nevertheless, the Amended Complaint fails to allege that Fisher suffered from anxiety—whether alone or in combination with "fatigue" and "stress" caused by her allegedly excessive workload—that "substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Indeed, Fisher does not allege that her anxiety, fatigue, and stress substantially impair her ability to work generally, to work as a math teacher or a teacher in general, or even to work as a math teacher at VSCHSD—only that she could not work in her specifically assigned role at VSCHSD. Am. Compl. ¶ 42 (alleging that doctors advised Fisher not to return to work until "the conditions at working causing her symptom . . . were resolved"); *Felix v. New York City Trans. Auth.*, 324 F.3d 102, 107 (2d Cir. 2003) ("An ADA plaintiff who is not otherwise impaired in a major life activity but suffers debilitating anxiety or stress from a particular job could get to a jury merely by alleging that the job causes . . . some . . . set of disabling symptoms that can be characterized as a syndrome. We decline to adopt such an expansive reading of the ADA that frustrates its plain statutory meaning."); *Potter v. Xerox Corp.*, 1 F. App'x 34, 37 (2d Cir. 2001) (finding that where the plaintiff's "disability only prevents him from working in one position—the position he held under his last supervisor—[his] ability to work is not substantially impaired"); *Shields v. NYC Health and Hosps. Corp.*, 489 F. Supp. 3d 155, 164 (E.D.N.Y. 2020) ("Plaintiff does not allege that these conditions substantially limited his ability to work generally. Instead, Plaintiff alleges only that his purported disabilities prevented him from working with [specific supervisors].").

The case on which Fisher relies, *McCormack v. Long Island R. Co.*, 03-cv-6597, 2006 WL 490032 (S.D.N.Y. Feb. 28, 2006), is inapposite. There, the plaintiff, a track worker for the Long Island Railroad, suffered from chronic alcoholism and epilepsy, which caused him to experience frequent seizures. *Id.* at *1. The district court in that case found that the plaintiff's condition disqualified him from an entire "class of jobs" and a "broad range of jobs in various classes" because his seizures precluded him from "working in a safety-sensitive environment, working at heights, or working alone." *Id.* at *5–6. Here, by contrast, the Amended Complaint alleges that Fisher is fit to work in her *very same job*, if Defendants were to distribute the work more evenly among Fisher and her colleagues and limit her inter-building travel expectations. (Am. Compl. ¶¶ 37, 45.)

Moreover, concerning Fisher's ADA discrimination claim, the Amended Complaint fails to plausibly allege that Fisher experienced an adverse employment action that gives rise to an inference of disparate treatment on the basis of a disability. *See Littlejohn*, 795 F.3d at 311. The Amended Complaint specifically alleges that Fisher experienced harassment due to her status as an unmarried woman without children, not due to her status as a person with "stress, fatigue and anxiety." (*See* Am. Compl. ¶¶ 36–37, 40.)

Finally, concerning Fisher's ADA failure to accommodate claim, the Amended Complaint fails to plausibly allege that Fisher requested a reasonable accommodation for any disability. The Amended Complaint alleges that Fisher "repeatedly brought concerns" to the VSCHSD administration "*about her discrimination*" (Am. Compl. ¶ 37 (emphasis added)); it does not allege that Fisher brought concerns to the VSCHSD administration about her anxiety disorder or other disability and sought accommodations for any such disability. Fisher is correct that the Amended Complaint alleges that she "advised [D]efendants of her ongoing health issues,

41

and the fact that her doctors opined that they were the direct result of the discrimination and hostile work environment." (Am. Compl. 47; Opp'n at 20–21.) However, neither this passage nor any other passage in the Amended Complaint identifies any specific reasonable accommodation sought by Fisher in light of a disability.

The allegations in Fisher's supplemental affidavit, even if accepted as an amendment to the Amended Complaint, do not change this conclusion. In the affidavit, Fisher attests that she "told [D]efendants that if they gave [her] work that was similar in nature and scale to what they gave men and women with children," this would alleviate the "tremendous stress" she was facing. (Fisher Aff. ¶ 3.) She also attests that she "gave [Defendants] specific examples of changes they could make, such as not forcing [her] to run back and forth between buildings, not making [her] revise curriculums over and over again, and preventing the other employees from mocking [her] and calling [her] names." (*Id.* ¶ 3.) But even if these communications with Defendants could be construed as requests for a "reasonable accommodation," the Amended Complaint and the supplemental affidavit still fail to plausibly allege that Fisher sought a reasonable accommodation *to accommodate a disability*. To the extent that Fisher argues that the reasonable accommodation she sought was the ability to perform her job within more reasonable workload parameters and without having to travel between buildings, this argument is circular. The Amended Complaint does not allege that Fisher's job requirements were unsustainable due to the disabilities of "fatigue, stress and anxiety"; rather, it alleges that the "fatigue, stress and anxiety" she experienced were harms *caused by* Defendants' "unreasonable" practice of giving her an excessive amount of work and subjecting her to a "brutal, multiple building schedule." (*See* Am. Compl. ¶¶ 34–35.)

Accordingly, I dismiss Fisher's ADA claims under Rule 12(b)(6).

## VI.    SECTION 1983 CLAIMS

Defendants move to dismiss Fisher's Section 1983 hostile work environment claim against the Individual Defendants and *Monell* supervisory liability claim against VSCHSD on multiple grounds. In their opening brief, Defendants argue that Fisher's Section 1983 claims must be dismissed because they "attempt[] to vindicate statutory rights conferred by Title VII, which contains its own structure for private enforcement and cannot serve a basis for a Section 1983 claim." (Mem. at 16–17.) Defendants also argue that Fisher's claim is time-barred under Section 1983's three-year statute of limitations. (*Id.* at 17.)

With respect to Fisher's Section 1983 claim against the Individual Defendants, Defendants argue that the Individual Defendants are protected by qualified immunity. (Mem. at 23–24.) On reply, Defendants additionally argue that the Amended Complaint fails to state a claim for hostile work environment under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because the Amended Complaint fails to allege sufficiently "severe or pervasive" harassment or that Fisher is "a member of a protected class." (Reply at 7–8.) Finally, while Defendants do not expressly assert in their argument for dismissal of the Section 1983 claims their Title VII argument that Fisher has not plausibly alleged discrimination on the basis of sex and a plus factor, I understand that Defendants seek to apply this argument in the Section 1983 context in light of their contention that Fisher's Title VII and Section 1983 claims are duplicative. (Mem. at 16–17.)

With respect to Fisher's *Monell* claim against VSCHSD, Defendants argue that the Amended Complaint does not plausibly allege that the defendant municipality maintained a "policy or custom" of discrimination. (*Id.* at 17.)

I address each of Defendants' arguments below.

### a. Enforcement of Title VII Rights Under Section 1983

Section 1983 permits an individual to bring a suit for damages against any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights," but rather is a "method for vindicating federal rights elsewhere conferred"—such as by the U.S. Constitution. *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). "A [Section] 1983 action may not, however, be brought to vindicate rights conferred only by a statute that contains its own structure for private enforcement, such as Title VII." *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004). Nevertheless, "[a] Title VII plaintiff is not precluded from bringing a concurrent [Section] 1983 cause of action, such as a claim for denial of equal protection, so long as the [Section] 1983 claim is based on a distinct violation of a constitutional right." *Id.*

Here, Defendants are correct that Fisher cannot bring a Section 1983 claim to enforce her Title VII rights. (Mem. at 16–17.) However, as Fisher notes in her opposition brief, she brings her Section 1983 claim to enforce her rights under "the Fourteenth Amendment of the United States Constitution," not any rights under Title VII. (Opp'n at 18; Am. Compl. ¶ 63.) I therefore construe Fisher's Section 1983 claim as a claim seeking to vindicate her rights under the Fourteenth Amendment Equal Protection Clause—not Title VII.

### b. Statute of Limitations

"[I]n New York, the statute of limitations for Section 1983 claims is New York's general statute of limitations for personal injury actions, N.Y. C.P.L.R. § 214(5), which is three years" from the date of the alleged injury. *Kane v. Mt. Pleasant Central School Dist.*, 80 F.4th 101, 108

(2d Cir. 2023). The same "continuing violation" doctrine discussed above in connection with Fisher's Title VII hostile work environment claim, Discussion Section III.a, applies here as well. *See Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 309 (2d Cir. 2020) ("Although the [continuing violation] doctrine is utilized most often in connection with certain Title VII claims, its application is not limited to that context. This Court, for example, has applied the doctrine to various constitutional claims brought under [Section] 1983.").

Fisher filed this action on May 8, 2023; thus, under the three-year statute of limitations, only claims concerning alleged incidents that occurred on or after May 8, 2020 are timely, unless the continuing violation doctrine applies. *See* Compl.; *see also Kane*, 80 F.4th at 108. Those alleged incidents are: (1) "remarks" made by Fisher's coworkers "on at least a weekly-to-daily basis" from 2014 until her suspension on September 1, 2021, including that she had a "resting bitch face" and "that she should stop complaining about her workload because she did not have a husband or have to care children of her own" (Am. Compl. ¶ 36); the "unfair and excessive amount of work [that Fisher] was expected to do simply because she was an unmarried woman without children," to the extent that this excessive workload continued on or after May 8, 2020 (*id.* ¶ 37); and (3) Defendants' decision to suspend Fisher's pay and benefits on September 1, 2021 (*id.* ¶ 48).

Applying the continuing violation doctrine, I find that certain untimely incidents alleged in the Amended Complaint are sufficiently related to the timely incidents of an ongoing excessive workload and frequent harassing comments from coworkers, such that these incidents constitute the same alleged hostile work environment. *See Morgan*, 526 U.S. at 118. These otherwise untimely alleged events include: (1) Defendants' assignment of an excessive workload to Fisher predating May 8, 2020 (Am. Compl. ¶ 28); (2) "weekly-to-daily" remarks towards

Fisher beginning in 2014 (*id.* ¶ 35); (3) Fisher's coworker's actions in 2015 and 2017 to hide her car keys "to literally force her to stay and do more [work]" (*id.* ¶ 28); (4) an unidentified coworker's act of stealing Fisher's flash drive containing curriculum-related work product in 2017 (*id.* ¶ 29); and (4) Defendants' decision to reassign Fisher to a different position in June 2019 (*id.* ¶ 30). Fisher may thus bring a Section 1983 claim on the theory that all of these incidents collectively amounted to a hostile work environment in violation of Fisher's rights under the Equal Protection Clause of the Fourteenth Amendment.

### c. Failure to State a Claim

While the standard for establishing a hostile work environment claim under Title VII is similar to the standard for establishing such a claim under Section 1983 and the Equal Protection Clause, the Second Circuit has counseled district courts not to conflate the two causes of action. *See Naumovski v. Norris*, 934 F.3d 200, 221 (2d Cir. 2019). Both claims require a plaintiff to "plausibly allege offensive conduct based on sex that was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Naumovski*, 934 F.3d at 212; *see also* Discussion Section III.b. However, there are four key differences between a Section 1983 hostile work environment claim and a Title VII hostile work environment claim.

First, a plaintiff bringing a Section 1983 claim must plausibly allege that the "deprivation was committed by a person acting under color of state law." *Naumovski*, 934 F.3d at 212. Second, while only an employer may be liable under Title VII, a Section 1983 claim "can be brought against any individual responsible for the discrimination." *Id.* Third, while Title VII provides that employers may be held liable for the conduct of their employees, Section 1983 requires the individual defendant to have "personally violated" the plaintiff's rights. *Id.*; *see also*

46

*Raspardo v. Carlone*, 770 F.3d 97, 115 (holding that, in the context of equal protection claims,

the plaintiff "must come forward with at least some credible evidence that the actions of the

*individual* were motivated by racial animus or ill-will" (emphasis in original)). Fourth, courts

apply a "but-for" causation test when assessing whether the alleged hostile work environment

was "because of" the plaintiff's protected characteristic. *Naumovski*, 934 F.3d at 212; *see also*

*Wilson v. Hanrahan*, 804 F. App'x 58, 62 (2d Cir. 2020) ("Under [Section] 1983, a plaintiff must

additionally establish . . . that a defendant's conduct was a 'but-for' cause of the hostile work

environment.") In *Bostock v. Clayton County, Georgia*, 590 U.S. 644 (2020), the Supreme Court

articulated the long-establish understanding of the "simple and traditional standard of but-for

causation": "[A] but-for test directs us to change one thing at a time and see if the outcome

changes. If it does, we have found a but-for cause." *Id.* at 656.[16]

Here, I disagree with Defendants' contention that the alleged conduct was not sufficiently

"severe or pervasive" to state a claim. Indeed, the Amended Complaint alleges, among other

things, that Fisher received "weekly-to-daily" comments regarding the fact that "she should stop

complaint about her workload because she did not have a husband or have to care children of her

own" and that the schedule to which she was subjected was so "brutal" that she needed to take

FMLA leave. (Am. Compl. ¶¶ 34, 36, 45.) Because "sex" is a protected class and the Amended

Complaint clearly pleads that Fisher is a woman, I likewise disagree with Defendants' general

statement that the Amended Complaint "has failed to plead that [Fisher] was a member of a

protected class." (*Id.* ¶¶ 19, 21, 23, 35, 37, 56.) To the extent that Defendants intend to argue that

---

[16] Although *Bostock* concerned Title VII claims, its instruction as to the "but-for" causation
standard applies to Fisher's Section 1983 hostile work environment claim.

sex plus the status of being an unmarried person without children is not a protected class, as I have held above, Discussion Section III.b, Fisher's discrimination and hostile work environment claims under Title VII and Section 1983/equal protection may be fairly analyzed under the sex plus framework, since, at least in some circumstances, a complaint may plead facts supporting a plausible allegation that a woman was subject to different treatment because of her status of being unmarried and without children in a manner that implicates gender stereotypes.

Nevertheless, Fisher's Section 1983 hostile work environment claim fails on causation. The Amended Complaint does not allege that Fisher's sex was a but-for cause of the alleged hostile work environment she faced; instead, it specifically alleges that Defendants' imposition of an unreasonable work schedule "was not comparable to those of male teachers or other female teachers (most of whom were, unlike Ms. Fisher, married with children)." (Am. Compl. ¶ 23.) The Amended Complaint does not allege that Defendants treated Fisher differently than a similarly situated male teacher—that is, a male teacher who is unmarried and without children—which contradicts any claim that Fisher's *sex* was a but-for cause of the treatment she received. *See Bostock*, 590 U.S. at 656. ("[A] but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause."). Further, even though "most" of the other teachers were "married with children," the Amended Complaint alleges that Fisher was singled out and treated differently than *all* other teachers, regardless of sex, marital status, or parental status. (Am. Compl. ¶ 23.) Therefore, the Amended Complaint fails to satisfy the "but-for" causation standard under Section 1983. *See Bostock*, 590 U.S. at 656.

### d. Qualified Immunity

"Qualified immunity is an affirmative defense available to a person defending a suit brought under [Section] 1983," protecting officials from "liability for civil damages under

[Section 1983] insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." *Linton v. Zorn*, 135 F.4th 19, 30 (2d Cir. 2025). In general, a defendant official is entitled to qualified immunity "unless the official's conduct violated a clearly established constitutional right." *Id.* at 31. Thus, "[t]he qualified immunity question is subject to a two-prong analysis to determine whether: (1) the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right and (2) the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Id.* at 32. In determining whether a right is "clearly established," "controlling authority or a robust consensus of cases of persuasive authority [must] have recognized the right at issue." *Id.* The court need not find a case "directly on point to hold that a defendant's conduct violated a clearly established right," but "existing precedent must have placed the . . . constitutional question beyond debate." *McKinney v. City of Middletown*, 49 F.4th 730, 739 (2d Cir. 2022). Accordingly, the Supreme Court has directed courts to define clearly established rights with a "high degree of specificity." *District of Columbia v. Wesby*, 583 U.S. 48, 63–64 (2019).

Since I have found that the Amended Complaint fails to state a plausible Section 1983 claim for a violation of the Fourteenth Amendment right to equal protection (*see* Discussion Section VI.c), no Section 1983 claims remain against the Individual Defendants. I thus do not address whether qualified immunity would apply to these claims were they to have gone forward. In other words, I need not reach the prong of the qualified immunity analysis that requires a determination as to whether any state claim for violation of a constitutional right was "clearly established" at the time of the alleged conduct. *See Linton*, 135 F.4th at 30 (setting out the two-pronged qualified immunity analysis).

### e. Monell Claim Against VSCHSD

In *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658 (1978), the Supreme

Court established that "municipalities and other local government units" are "persons" who may

be liable under Section 1983. *Id.* at 690. Still, "a municipality cannot be held liable under

[Section] 1983 on a *respondeat superior* theory." *Id.* at 691. In other words, the plaintiff must

show that, "through its *deliberate* conduct, the municipality was the 'moving force' behind the

injury alleged." *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 98 (2d Cir. 2020)

(emphasis in original). Accordingly, in order to bring a *Monell* claim against a municipality or

other local government unit, the plaintiff must allege the following: "(1) a municipal policy or

custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional

right." *Friend v. Gasparino*, 61 F.4th 77, 93 (2d Cir. 2023). A plaintiff may establish the

existence of a municipal policy giving rise to *Monell* liability in four different ways:

> (1) a formal policy endorsed by the municipality, (2) actions directed by the
> government's authorized decisionmakers or those who establish governmental
> policy, (3) a persistent and widespread practice that amounts to a custom of which
> policymakers must have been aware, or (4) a constitutional violation resulting
> from that policymaker's failure to train municipal employees.

*Deferio v. City of Syracuse*, 770 F. App'x 587, 589–90 (2d Cir. 2019) (citing *Turpin v. Mailet*,

619 F.2d 196, 199 (2d Cir. 1980), *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986),

*City of Canton v. Harris*, 489 U.S. 378, 380 (1989)); *see also Connick v. Thompson*, 563 U.S. 51,

61 (2011) (recognizing that a municipal policy "includes the decisions of a government's

lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to

practically have the force of law").

Fisher raises two arguments to support her contention that the Amended Complaint states

a *Monell* claim against VSCHSD, both of which are unavailing: first, that "[a]ll of the actions

and omissions described in the Amended Complaint were made by the [I]ndividual [D]efendants, including principal Bret Strauss," and that the Individual Defendants were "acting as final policymakers for [VSCHSD]"; second, that "the abuse to which Ms. Fisher was subjected was persistent and widespread enough that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials." (Opp'n at 18–19.)

With respect to Fisher's first argument, the Amended Complaint does not establish which of the Individual Defendants, if any, had "final policymaking authority" with respect to the relevant VSCHSD policies, instead generally alleging that Curran, Smith, and Strauss individually had "binding authority to assign work responsibilities . . . and set policies." (Am. Compl. ¶¶ 15–17.) Nor does it clearly identify any supposed relevant municipal policies pursuant to which Fisher faced the alleged discrimination on the basis of her sex and status as an unmarried woman without children. As to Fisher's second argument, the Amended Complaint likewise does not allege a "persistent and widespread" custom of discrimination against unmarried women without children. Indeed, the Amended Complaint appears to concede that Fisher was singled out among all other employees—male and female, married and unmarried, and with and without children. (Am. Compl. ¶ 23 (alleging that Curran and Smith's alteration of Fisher's work schedule "was not comparable to those of male teachers or other female teachers (most of whom were, unlike Ms. Fisher, married with children)").)

As noted above, Fisher also requests, "If the Court disagrees with [Fisher's *Monell* claim analysis]," that the Court "review the accompanying Affidavit of Ms. Fisher and treat it as an amendment to the Amended Complaint." (Mem. at 19–20 (citing *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 26 (2d Cir. 1988) ("Because no answer had been filed, however, it would have been permissible for the plaintiffs to present the allegations of the

51

affidavit as an amendment to the complaint in response to the 12(b)(6) motion . . . . If the affidavit could be construed as an amendment, its additional allegations would have remedied the complaint's lack of specificity.").) Defendants oppose this request and argue that even if the Court were to construe the affidavit as setting forth allegations in a second amended complaint, Fisher's claims fail to survive a 12(b)(6) analysis. (Reply at 3, 9–10, 10 n.1.)

As addressed above, Fisher has not filed a motion to amend under Rule 15(a)(2), Fed. R. Civ. P., or explained why the proposed amendment is not futile. *Adlife Mktg.*, 2018 WL 4568801, at *1 (recognizing that leave to amend should not be granted even under the lenient standard set forth in Rule 15(a)(2), Fed. R. Civ. P., when "there is a showing of bad faith, undue delay, futility or undue prejudice to the non-moving parties"). Nevertheless, even considering the allegations set forth in Fisher's affidavit, Fisher fails to state a *Monell* claim against VSCHSD for violation of her rights to equal protection. Fisher attests that "upper management and other decision makers" were "aware of what was happening to [Fisher]" and were "responsible," citing a doctor's note that she submitted in 2016 "to both building and district level" and a September 29, 2020 Zoom meeting with Assistant Superintendent Cliff O'Donnel, Strauss, and Union Representative Denise Morasco, during which Fisher "describe[d] the extent of the problem and the extra hours of work [she] was doing." (Fisher Aff. ¶¶ 4–5.) But even if I take these additional allegations as true, Fisher has failed to plausibly allege that any specific VSCHSD policy caused her disparate treatment. Nor has she plausibly alleged that such a policy was established through any of the four means available under the law: a formal policy endorsed by VSCHSD, an act of any Individual Defendant acting as a final policymaker for VSCHSD in that specific arena, custom with the force of law, or any failure to supervise or train school district staff by VSCHSD or any Individual Defendant acting as a final policymaker over supervision or training over such

staff. *See Deferio*, 770 F. App'x at 589–90 (identifying all four ways by which a plaintiff may establish a municipal policy giving rise to Monell liability) (citing *Turpin*, 619 F.2d at 199, *Pembaur*, 475 U.S. at 481, *City of Canton* , 489 U.S. at 380).

Therefore, I dismiss Fisher's *Monell* claim against VSCHSD under Rule 12(b)6).

## VII.    PUNITIVE DAMAGES AGAINST VSCHSD

Fisher cannot seek punitive damages against VSCHSD under Section 1983 for several reasons. First, Defendants correctly assert that, as a matter of law, punitive damages are not available against a municipality under Section 1983. Mem. at 24; *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[W]e hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983."). Second, Fisher does not dispute or even respond to Defendants' assertion that punitive damages are unavailable under Section 1983, and therefore forfeits her attempt to pursue punitive damages. *See generally* Opp'n; *In re Demetriades*, 58 F.4th 37, 54 (2d Cir. 2023) (holding that, where a party refers to an issue in only "a perfunctory manner, unaccompanied by any effort at developed argumentation, it must be deemed waived[] . . . or, more precisely, *forfeited*"). Finally, punitive damages are unavailable for the additional reason that I have dismissed Fisher's Section 1983 claim against the municipality. *See supra*, Discussion Section VI.e.

## VIII.   FMLA CLAIMS

Defendants argue that Fisher's claims under the FMLA for interference with Fisher's FMLA rights and retaliation in response to Fisher's use of FMLA benefits should be dismissed because the Amended Complaint fails to allege that Fisher was denied any FMLA benefits to which she was entitled or that she experienced retaliation for engaging in an activity protected by the FMLA. (Mem. at 22–23). I address each claim below.

### a. FMLA Interference Claim

The FMLA provides that it shall be "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" under the FMLA's leave provisions. 29 U.S.C. § 2615(a)(1). "In a general sense, an employee brings an 'interference' claim when her employer has prevented or otherwise impeded the employee's ability to exercise rights under the FMLA." *Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 166 (2d Cir. 2017). To state a claim for interference with FMLA leave, a plaintiff must allege: (1) "that she is an eligible employee under the FMLA"; (2) "that the defendant is an employer as defined by the FMLA"; (3) "that she was entitled to take leave under the FMLA"; (4) "that she gave notice to the defendant of her intention to take leave"; and (5) "that she was denied benefits to which she was entitled under the FMLA." *Shultz v. Congregation of Shearith Israel of City of N.Y.*, 867 F.3d 298, 307 (2d Cir. 2017).

As a threshold matter, Fisher has forfeited the FMLA interference claim by only addressing Defendants' arguments concerning her FMLA retaliation claim and entirely failing to respond in her opposition brief to Defendants' argument that the Amended Complaint fails to allege that she was denied any benefit to which she was entitled under the FMLA. Opp'n at 22; *In re Demetriades*, 58 F.4th at 54.

Moreover, even if Fisher had not forfeited her FMLA interference claim, Defendants are correct that the Amended Complaint fails to state such a claim because it does not allege that Fisher was denied any benefit to which she was entitled under the FMLA. In fact, the Amended Complaint explicitly alleges that Fisher took FMLA leave beginning on February 12, 2021. (Am. Compl. ¶ 45.) Although the Amended Complaint alleges that Defendants "suspend[ed] [Fisher's] pay and medical benefits while she was out on FMLA leave" on September 1, 2021 (*id.* ¶ 49),

this allegation is implausible when reading the Amended Complaint as a whole. Under the FMLA, qualifying employees are entitled to twelve workweeks of unpaid leave during any 12-month period for any qualifying event. 29 U.S.C. § 2612(a)(1), (c). The Amended Complaint does not allege that Fisher took less than twelve workweeks of FMLA leave, or that Fisher took her twelve workweeks of leave in non-consecutive weeks—in other words, that Fisher (1) went on FMLA leave on February 12, 2021, (2) returned to work after taking less than twelve workweeks of leave, and (3) then went on FMLA leave again such that she was on FMLA leave when Defendants suspended her pay and benefits on September 1, 2021. Accordingly, even if Fisher had not forfeited the FMLA interference claim by failing to respond to Defendants' dismissal arguments in her opposition brief, the Amended Complaint fails to plausibly allege that the suspension of Fisher's pay and benefits on September 1, 2021 unlawfully "interfered" with her ability to take twelve workweeks of FMLA leave, which commenced nearly seven months earlier, on February 12, 2021.

Accordingly, I dismiss Fisher's FMLA interference claim.

**b. FMLA Retaliation Claim**

In contrast to FMLA "interference" claims, FMLA "retaliation" claims "involve an employee actually exercising her rights or opposing perceived unlawful conduct under the FMLA and then being subjected to some adverse employment action by the employer." *Woods*, 864 F.3d at 166. To state a claim for retaliation under the FMLA, the complaint must plausibly allege that: (1) the plaintiff "exercised rights protected under the FMLA"; (2) the plaintiff "was qualified for [her] position"; (3) the plaintiff "suffered an adverse employment action"; and (4) "the adverse employment action occurred under circumstances giving rise to an inference of

retaliatory intent." *Patel*, 2021 WL 4852426, at *3 (citing *Graziadio v. Culinary Inst. of America*, 817 F.3d 415, 429 (2d Cir. 2016)).[17]

Here, the Amended Complaint sufficiently states a claim for retaliation under the FMLA.

First, it alleges that Fisher exercised a right protected by the FMLA when she took FMLA leave beginning on February 12, 2021. Am. Compl. ¶ 45; *see* 29 U.S.C. § 2612(a)(1) (granting employees twelve workweeks of FMLA leave). Second, it alleges that Fisher was qualified for her position, having worked at VSCHSD without issue from 2002 to 2014 and receiving tenure in 2005. (Am. Compl. ¶¶ 19–20.)

Third, it alleges that Fisher suffered an adverse employment action when Defendants suspended her pay and benefits on September 1, 2021. Am. Compl. ¶ 48; *see Banks v. General Motors, LLC*, 81 F.4th 242, 276 (2d Cir. 2023) ("[A] suspension without pay could well act as a deterrent . . . because a reasonable employee facing the choice between retaining her job (and paycheck) and filing a discrimination complaint might well choose the former." (citing *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 73 (2006)). The Second Circuit has previously held that the alleged retaliatory adverse action must be "materially adverse"—that is, it must be "likely to dissuade a reasonable worker in the plaintiff's position from exercising [her] legal rights." *Millea v. Metro-North R. Co.*, 658 F.3d 154, 164 (2d Cir. 2011). The Second Circuit has not, however, addressed whether the Supreme Court's recent decision in *Muldrow*, 601 U.S. 346 at 347, in which the Court held that plaintiffs bringing *discrimination* claims under

---

[17] *In Graziadio v. Culinary Inst. of America*, the Second Circuit recognized the elements required for a plaintiff to establish a "*prima facie* case" of FMLA retaliation. 817 F.3d at 429. In applying *Graziadio* in the context of review of a district court order dismissing an FMLA retaliation claim under Rule 12(b)(6), the court has not required that the plaintiff establish the elements of a prima facie case, but instead has required that the pleadings plausibly allege facts that show each element is met. *See Patel*, 2021 WL 4852426, at *3.

Title VII do not need to establish that the alleged adverse action was "materially adverse," applies to retaliation claims under the FMLA. The Court in *Muldrow* expressly affirmed the continued use of the "materially adverse" standard in the context of *retaliation* claims under Title VII, suggesting that this heightened standard still applies to FMLA retaliation claims as well. *See Muldrow*, 601 U.S. at 348. In any event, Defendants do not appear to dispute that the alleged retaliatory action here—the complete suspension of Fisher's pay and benefits—would satisfy the adverse action requirement under either standard. (*See* Mem. at 22–23.) Because suspension without pay and benefits is likely to dissuade a reasonable worker in Fisher's position for exercising their rights under the FMLA, the Amended Complaint alleges an adverse action for purposes of the FMLA retaliation claim.

Fourth, the Amended Complaint alleges circumstances giving rise to an inference of retaliation in light of the temporal proximity between Fisher's FMLA leave (which began on February 12, 2021 and continued for up to twelve workweeks, whether those workweeks were taken continuously or broken up into separate chunks) and Fisher's September 1, 2021 suspension without pay and benefits, as well as an alleged April 26, 2021 statement by the Local 1633 president informing Fisher that her actions had put her on "a slippery slope with the District." Am. Compl. ¶¶ 45, 48, 52; *see Gorzynski*, 596 F.3d at 110 ("Though this Court has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, we have previously held that five months is not too long to find the causal relationship.").

Defendants' argument that Fisher's retaliation claim should be dismissed because "she has failed to allege . . . that she was retaliated against because she engaged in activity protected by the FMLA" relies on factual assumptions outside of the pleadings. (*See* Mem. at 22–23.)

Specifically, Defendants argue that "[t]he act of putting Plaintiff on unpaid leave in September 2021, when she desired to remain on leave and did not return to work, is not retaliation because Plaintiff was not entitled to FMLA leave in September 2021." (*Id*.) Fisher's entitlement to FLMA leave in September 2021 is beside the point. As explained above, Fisher may rely on the temporal proximity between the time she was on FMLA leave—which started on February 12, 2021 and continued for up to twelve weeks, whether taken continuously or in separate chunks— and her September 1, 2021 suspension along with a statement by the Local 1633 president informing Fisher that she was on a "slippery slope with the District" to plausibly allege that Defendants suspended her pay and benefits with retaliatory intent as required to plead an FMLA retaliation claim.

Moreover, while discovery may very well prove Defendants' factual assertion that Defendants suspended Fisher's pay and benefits on September 1, 2021 because "she desired to remain on leave and did not return to work" after her FMLA benefits expired, that is not what the Amended Complaint alleges. In fact, it specifically alleges that Defendants suspended Fisher's pay and benefits even though "she still had unused sick days" that she could have used, as well as "many medical records validating her pressing condition." (Am. Compl. ¶ 48.) Taking as true all well-pled allegations in the Amended Complaint, as I am required to do on a Rule 12(b)(6) motion, I find that the Amended Complaint adequately pleads a causal relationship between Fisher's decision to take FMLA leave and the alleged retaliatory conduct along with the other elements required to plead an FMLA retaliation claim.

For these reasons, I deny dismissal of Fisher's FMLA retaliation claim.

## IX.    SECTION 301 THIRD-PARTY BENEFICIARY CLAIM

Defendants argue that Fisher's Section 301 third-party beneficiary claim should be dismissed because it is time-barred under the applicable statute of limitations—which, according to Defendants, is six months from the alleged breach—and because the Amended Complaint fails to allege a breach of any provision of the Collective Bargaining Agreement. I address Defendants' arguments below.

Section 301 of the Labor Management Relations Act permits individuals to bring suits against their employers for breach of the collective bargaining agreement to which the employer is bound. 29 U.S.C. § 185. "Ordinarily, however, an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement." *DelCostello v. Int'l Broth. of Teamsters*, 462 U.S. 151, 163 (1983). These suits are essentially breach of contract claims where the relevant contract is the underlying collective bargaining agreement, and, accordingly, courts have generally "borrowed" the applicable state statute of limitations governing contract claims. *Id.* at 162–63. Still, exhaustion is often not possible where "the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." *Id.* at 164. In such cases, the individual may instead bring a "hybrid" suit, which essentially comprises two causes of action: (1) a Section 301 claim against the employer and (2) a claim against the union for breach of the duty of fair representation, which is "implied under the scheme of the National Labor Relations Act" ("NLRA"). *Id.* at 164. While the plaintiff need not sue both her employer and the union, she must plead and prove both claims. *Id.* Therefore, unlike a "pure" Section 301 claim, a "hybrid" Section 301/unfair representation claim is not a "straightforward" breach of contract suit, but rather a suit that implicates the NLRA's statutory

59

scheme. *Id.* Thus, in such cases, the Supreme Court has instructed courts to "borrow" the limitations period from Section 10(b) of the NLRA, 29 U.S.C. § 160(b), which requires the plaintiff to file a complaint within six months of the alleged unfair representation by the union. 29 U.S.C. § 160(b); *DelCostello*, 462 U.S. at 169; *see also Kalyanaram v. American Ass'n of Univ. Profs. at N.Y. Inst. of Tech.*, 742 F.3d 42, 46 (2d Cir. 2014) ("It is undisputed that the limitations period for filing [an unfair representation claim against the union] in the district court is borrowed from section 10(b) of the NLRA, 29 U.S.C. § 160(b), which provides for a six-month limitations period.").

Here, the six-month limitations period of NLRA Section 10(b) applies because, although Fisher has not sued Local 1633 (the teacher's union to which she belongs), the Amended Complaint's allegations make clear that she brings a "hybrid" Section 301/unfair representation claim. (*See* Am. Compl. ¶ 51 ("[I]t appears that the Union . . . was either unable or unwilling to take any action to defend [Fisher's] rights."; *id.* ¶ 52 (alleging that the president of Local 1633 "discouraged [Fisher] from taking steps against [D]efendants"); *id.* ¶ 53 ("Local 1633 breached its duty to fairly represent Ms. Fisher and prevented her from exhausting the grievance procedure set forth in the [Collective Bargaining] Agreement.")). Since the Amended Complaint alleges that the most recent unfair action by the union occurred on April 26, 2021, Fisher had until October 26, 2021 to file a complaint alleging that the union failed to fairly represent her (i.e., six months from the alleged unfair practice). 29 U.S.C. § 160(b); Am. Compl. ¶ 52. However, Fisher did not bring this suit until May 8, 2023, more than two years after the last alleged unfair practice by the union. (*See* Compl.)

Fisher's cursory argument that "the statutes of limitations have been tolled by the continuing violations doctrine" fails. (Opp'n at 21.) As an initial matter, Fisher points to no

60

authority—and I have found none—supporting the proposition that the "continuing violation" doctrine analysis applied to Title VII claims applies to a hybrid Section 301 claim for breach of a collective bargaining agreement and breach of the duty of fair representation. Even if it did, the Amended Complaint fails to allege a single action by the union that falls within the applicable 6-month limitations period. (*See generally* Am. Compl.) Accordingly, Fisher's hybrid Section 301/unfair representation claim is time-barred.

Because I find that Fisher's hybrid Section 301/unfair representation claim is barred under Section 10(b)'s six-month statute of limitations, I do not reach the question whether the Amended Complaint pleads a plausible hybrid Section 301/unfair representation claim.

## X.    SUPPLEMENTAL JURISDICTION AND STATE LAW CLAIMS

28 U.S.C. § 1367(a) provides that, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy under Article III of the United States Constitution."

Since I have found that the Amended Complaint states a claim for retaliation under Title VII and the FMLA, which are federal statutes, this Court has jurisdiction over those claims pursuant to 28 U.S.C. § 1331(a). Further, Fisher's state law claims—claims under the NYSHRL challenged alleged sexual harassment and hostile work environment, disability discrimination, and retaliation—are "so related to [the] claims in [this] action . . . that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Indeed, the state law claims arise out of the exact same alleged factual circumstances giving rise to Fisher's Title VII and FMLA retaliation claims. Accordingly, the Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a). However, as discussed above, Defendants had anticipated filing a motion to

dismiss the state law claims along with the federal claims in their letter requesting a pre-motion conference but only addressed Fisher's federal claims as ordered by this Court. (Min. Entry, Dec. 5, 2023.)

Accordingly, the parties are directed to meet and confer to discuss whether, and to what extent, any of Fisher's state law claims should proceed in light of this Court's ruling on Defendants' Motion to Dismiss the federal claims. In the event that the parties do not reach agreement as to the viability and scope of Fisher's state law claims, Defendants shall file a letter seeking a pre-motion conference concerning any anticipated motion to dismiss the state law claims by September 17, 2025. Fisher shall file any response letter by October 1, 2025. The parties must comply with the Court's individual rules concerning the submission of pre-motion conference letters. *See* Judge Choudhury Individual Rule 5.1.

## CONCLUSION

For the reasons explained above, Defendants' Motion to Dismiss (ECF No. 30) is granted in part and denied in part. The following claims by Fisher are dismissed in their entirety: discrimination under Title VII, hostile work environment under Title VII, discrimination under the ADA, failure to accommodate under the ADA, hostile work environment under Section 1983 against the Individual Defendants and against the VSCHSD under *Monell*, interference under the FMLA, and breach of collective bargaining agreement/breach of the duty of fair representation under Section 301 of the LMRA. The Amended Complaint does not state any *Monell* claim for punitive damages against VSCHSD under Section 1983 because I have dismissed this claim and because punitive damages are categorically unavailable for such claims. Fisher's retaliation claims under Title VII and the FMLA may proceed, but only with respect to the allegation that

Defendants suspended Fisher's pay and benefits on September 1, 2021 in retaliation for her complaints of discrimination and use of FMLA benefits.

This Court has supplemental jurisdiction over Fisher's state law claims. As stated, the parties shall meet and confer to discuss the viability and scope of Fisher's state law claims in light of the rulings in this Opinion and Order. If the parties cannot agree as to which claims, if any, may go forward, Defendants shall file a pre-motion conference letter concerning any anticipated motion to dismiss the state law claims by September 17, 2025 and Fisher shall respond by October 1, 2025.

The Court respectfully directs Magistrate Judge Shields to order expedited discovery specifically directed towards the determination of whether the applicable EEOC charge date for the purpose of calculating the Title VII and ADA statute of limitations is December 23, 2021 or August 12, 2022. Once this discovery has been completed, the Court will order supplemental briefing on this issue.

Dated: Central Islip, New York
      August 27, 2025

                    /s/ Nusrat J. Choudhury
                    NUSRAT J. CHOUDHURY
                    United States District Judge